JOHN W. RUTH *vs.* STATE OF MARYLAND AND GEORGE
KENNARD.

BOUNDARIES—DESTRUCTION OF: FINES AND PENALTIES.—The boundaries the
destruction of which was prohibited under certain penalties by the Act of
1722, ch. 8, were boundaries established by some legally authorized per-
son, surveyor, officer or agent of the State or county, upon surveys made
by public authority or boundaries substituted for them, in the manner pre-
scribed by law, or other boundaries which had acquired a known charac-
ter and reputation, and not such boundaries as private persons, taking upon
themselves in a private manner the bounding or re-bounding of trees,
should set up and establish.

APPEAL from the Circuit Court for Harford County :

This was an action brought by the appellees against the
appellant to recover certain penalties for the cutting down
of a boundary tree in violation of the Act of 1722, ch. 8.
The defendant pleaded *not guilty.*

*Exception.* At the trial of the cause the plaintiffs proved
that in 1835, one Griffith sold and conveyed to George
Kennard four or five acres of land by two deeds, described
in the deeds as part of a tract called "Gravelly Bottom,"
and that the black oak tree mentioned in said deeds as a
boundary, was cut and destroyed by the defendant. The
defendant then proved that the said oak was a boundary
fixed upon by said Griffith and Kennard, as a boundary of
the lands in said deeds; and also proved, that the said oak
at the time it was made a boundary by said Kennard and
Griffith, stood on the lands of the defendant.

It was admitted that Kennard was a negro. On these
facts four prayers were offered by the defendant as follows:

"1st. That if the oak tree was not a boundary of a tract
of land granted by the State, the plaintiffs are not enti-
tled to recover.

"2nd. As there was no evidence of a grant from the
State for the lands mentioned in the said deed, the plain-
tiffs are not entitled to recover.

"3rd. If the boundary tree aforesaid, stood upon the

lands of the defendant, then the plaintiffs are not entitled to recover.

"4th. If the said George Kennard is a negro, the plaintiff is not entitled to recover."

These prayers were refused *pro forma,* and the verdict and judgment being against him the defendant appealed.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough and Cochran, J.

*Otho Scott,* for the appellant :

*1st* and *3rd Prayers.* It is contended that the Act of 1722, ch. 8, only relates to boundaries specified in patents, or at least only to land granted by patent. It never was intended to protect a boundary set up on the lands of a third person, as a boundary of a mere deed or contract between themselves. The boundaries of patents from the confusion in the early surveys, often stood on other people's land. In early surveys lines of former grants were not known, and it frequently happened that one patent covered a part of the land granted by a former; boundaries therefore of such patents it was necessary to preserve, in order that the party might ascertain what land had been granted to him clear of previous grants, but no such reason applied in grants by individuals. In such cases the grantor knew the bounds of his land, and would not be justified therefore in going on the lands of his neighbor to erect a boundary. The bounds in a patent were boundaries established by the State through its officers, and well might be protected to enable the State or party to ascertain what land had been granted. If a party destroyed a boundary thus set up by the State, it might and would probably interfere with the right of the State to the adjoining vacant land, but none of these reasons apply to boundaries set up by individuals when granting small portions of their own land. If an individual goes upon his neighbor's land to

mark or set up a boundary, he is a trespasser; not so of the State's officers, when they are fixing a boundary for a certificate of survey on which a patent is to be granted; besides, great wrongs might be done to land holders if third parties could enter for the purpose of establishing boundaries to their own land which they were conveying by deed; for example, they might bound valuable timber trees, they might bound a stone which constituted part of a lime quarry, and in various ways interfere with the rights of adjacent land holders. Or why might they not bound a house or building, and if this Act applies to such boundaries, prevent the owner from removing such house?

*2nd prayer.* There being no evidence of a grant by the State, it does not appear there was any such tract of land as "Gravelly Bottom," and if no such tract was granted by the State, then it could have no boundaries, it was vacant land, and the proof of forty years possession without proof of a certificate of survey, furnishes no presumption of a patent, and the proof of possession simply, without being possession by enclosures, does not bar the right of the State. So that from all that appears this land was vacant land belonging to the State, and no one had a right to convey it by a deed and fix boundaries to their deeds.

*4th Prayer.* A negro, whether free or slave, it is suggested, could not be an informer under the Act of 1722, he is not a competent witness, and how could he be an informer? All informations in this sense must be under oath, and a negro cannot make the oath. Suppose this proceeding was by indictment, as it might be, could a negro be an informer? Could a grand jury hear his information, or could any officer having authority to institute a prosecution do so? A negro might tell a white man that such person had committed an offence, but this would not be an information in the legal sense. But George Kennard is admitted to be a negro, without any evidence of his being a free negro, and every negro is presumed to be a slave until his freedom is shown. And can a slave be an informer?

The Act gives one half the penalty to any one who will sue for the same; a slave cannot maintain a suit, he has no civil rights and cannot in this case sue in the name of the State for the penalty. Nor can he be the owner of any boundary.

*H. W. Archer*, for the appellees, argued :

1st. That it matters not whether the tree destroyed by appellant was a call in a patent or in a deed *inter partes*. The intent and purpose of the Act of 1722, ch. 8, was to protect the muniments of title to lands. Its language applies as well to the boundaries called for in deeds as in patents. And if held to apply only to the latter, the Act would fall far short of its manifest purpose. No greater mischief would result from defacing the land records of private deeds and erasing the calls, than from cutting down and destroying the boundaries on the ground.

2nd. That it was not necessary for the appellees to produce a patent for the land of which the tree destroyed by the appellant was a boundary. A patent may be presumed, and the adversary possession for more than twenty years, was sufficient to establish Kennard's title even as against the State.

3rd. That it matters not whether the tree stood upon the land of Kennard or the land of Ruth. The language of the Act on the point is explicit. The words are: "Even although such boundary should stand within the person's own land, so cutting down and destroying the same," &c.

If in the exercise of his right of property, a land holder should find it very desirable to remove a house which has been made a call in a patent, or deed of the adjoining lands with his acquiescence or that of the party under whom he holds, or through whom he claims title, he cannot remove that house so as to destroy the call, unless he takes proper steps to preserve and fix the point called for. *Sic utere tuo ut alienum non ledas*. The Act in sec. 3, provides for such a state of affairs.

There is a proceeding prescribed by Act of Assembly for marking and bounding lands, which will apply where it becomes desirable to a land holder to destroy a call, by which the point may be preserved.

BOWIE, C. J., delivered the opinion of this Court :

This action was instituted by the appellees against the appellant, for the recovery of certain penalties under the Act of 1722, ch. 8, entitled, "An Act for preventing the destroying of boundaries, or bounded trees, and the bounding of trees, or setting up of boundaries, without lawful authority."

At the trial of the cause below, after the evidence had been submitted and closed, the appellant presented four prayers, involving the interpretation of this Act. A judgment for the plaintiff was entered *pro forma*, that the case might be brought up to this Court, where no exception has been taken in the argument to the form of the prayers. Considering the case as argued before us on the interpretation of the Act, we proceed to its construction.

No authorities have been cited by the counsel on either side, in support of their conflicting views of the interpretation of this Act, whence it is concluded, none are to be found. Our own examinations have led to a like result. The Court is therefore left to the usual rules of construction.

The preamble of the Act recites, "that many abuses and prejudices have happened to many of the inhabitants within this province, occasioned by private persons taking upon themselves in a private manner, the bounding or rebounding of trees, whereon the bounds either of their own lands or any other adjacent lands that may have any dependence, and also, by bounding of trees at random in the woods, the multiplicity of which renders the true boundaries of lands very precarious and uncertain; and likewise by the cutting down or destroying of bounded trees, either of or upon their own lands, or any others; for the remedy of

which evils for the future, the cutting down or destroying of boundaries or bounded trees, was enjoined and prohibited under a penalty of five thousand pounds of tobacco, and the bounding and re-bounding of trees, without lawful authority and without giving notice to all concerned, as therein prescribed, was prohibited under a like penalty.

It thus appears the bounding of trees without lawful authority, is prohibited under the same penalties as the distruction of boundaries. To make the act consistent with itself, it could not be intended that boundaries which were prohibited, were meant to be protected. Being a penal Act, it must be construed strictly. Hence, we have no difficulty in deciding that the boundaries, the destruction of which was prohibited, were boundaries established by some legally authorized person, surveyor, officer or agent of the State or county, upon surveys made by public authority, or boundaries substituted for them in the manner prescribed by law, or other boundaries, which had acquired a known character and reputation, and not such boundaries as private persons, taking upon themselves in a private manner the bounding or re-bounding trees, should set up and establish.

The supposed boundary said to have been destroyed in this case, was a call in two deeds from one Griffith to Kennard, the plaintiff, the one dated the 22nd of August 1835, for four acres and sixty-nine perches; the other dated the 13th June 1851, for one and three-quarter acres and twenty-two perches. The defendant proved that the tree, if a boundary at all, was a boundary fixed upon by Griffith and Kennard, and offered to prove it stood on the defendant's lands. No evidence was offered to show the tree had acquired any known character as a boundary, or was known to the defendant as such, or had been established with the knowledge and consent of the defendant or any proprietors of adjacent lands. It was clearly a boundary set up by private persons, in a private manner, and as such, not entitled to the protection of the law. It is not necessary to

determine how far the private property of the owner of land may acquire a *quasi* public character, by being marked and bounded as a boundary by public officers, (without the consent of the owner,) under public warrants. If done with his consent, he cannot afterwards appropriate it to his own use. These views being decisive of the case, it is unnecessary to notice the minor objections.

*Judgment reversed.*

(Decided Jan. 8th, 1864.)