## LEE GUY *v.* DIRECTOR, PATUXENT INSTITUTION

[Misc. No. 5, September Term, 1976.]

*Decided January 5, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Leonard C. Redmond, III, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellant instituted a habeas corpus proceeding in the United States District Court for the District of Maryland, contesting the legality of his transfer from the Maryland Correctional Institution at Hagerstown to the Patuxent Institution, pursuant to an order of the Circuit Court for Anne Arundel County, dated October 22, 1975. The District Court certified the following question of law for our consideration pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974) Courts and Judicial Proceedings Article, § 12-601 *et seq.*: "May an individual who has served a portion of his criminal sentence within the Division of Correction be referred to Patuxent Institution for evaluation by court order as a result of a request by the prosecuting State's Attorney based upon information available to the prosecutor at the time of conviction and sentencing?"

The record shows that on December 6, 1973, appellant was convicted of unlawfully manufacturing and possessing explosives and was sentenced to five years' imprisonment.

He escaped from confinement on April 28, 1974. After being apprehended, appellant was convicted of the crime of escape on October 31, 1974 and ultimately sentenced to six months' imprisonment, to run consecutively with his earlier five-year sentence. No suggestion was made during either sentencing proceeding that appellant should be referred to Patuxent Institution for diagnostic evaluation to determine whether he was a defective delinquent within the contemplation of the Maryland Defective Delinquent Law, Code (1957, 1976 Repl. Vol.) Art. 31B. A petition was, however, filed on April 3, 1975 by the State's Attorney for Cecil County to refer appellant to Patuxent for such an evaluation; that petition was held to be defective on jurisdictional grounds, as was a similar petition filed on June 6, 1975 by the State's Attorney for Anne Arundel County. A third petition filed by the State's Attorney for Anne Arundel County, based upon knowledge of appellant's two convictions, was granted on October 22, 1975 and appellant was referred to Patuxent for diagnostic evaluation.

Section 6 of Art. 31B provides that a request may be made to examine a person for defective delinquency if he has been convicted of criminal offenses falling within certain specified categories. Section 6 (b) provides that the request for examination may be made "by the Department of Correction or by the State's attorney . . . who prosecuted the person for a crime or offense specified hereinabove in this section, on any knowledge or suspicion of the presence of defective delinquency in such person." Section 6 (c) entitled "When requests may be made" provides that an examination for defective delinquency "may be requested and made *at any time* after the person has been convicted and sentenced . . . provided that the said person has been sentenced to a period of confinement in a penal institution or is then serving such a sentence. No such examination shall be ordered or made if the said person has been released from confinement for the particular crime or offense of which he was convicted or who is within six months of the expiration of his sentence." (emphasis supplied)

Appellant contends that the legislative history of Art. 31B reveals an intention on the part of the General Assembly to preclude a State's Attorney from requesting an examination for defective delinquency once the convicted offender has started to serve his criminal sentence. He argues that the legislature intended to so limit the authority of the State's Attorney since he maintained a jurisdictional interest in the case only up to the time that the defendant was actually sentenced.

The cardinal rule in the construction of statutes is to effectuate the real and actual intention of the legislature. *State v. Fabritz*, 276 Md. 416, 348 A. 2d 275 (1975). A statute should be construed according to the ordinary and natural import of its language, since it is the language of the statute which constitutes the primary source for determining the legislative intent. *Purifoy v. Merc.-Safe Dep. & Trust*, 273 Md. 58, 327 A. 2d 483 (1974); *Giant of Md. v. State's Attorney*, 267 Md. 501, 298 A. 2d 427 (1974). Where there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the legislature, *Frericks v. General Motors Corp.*, 278 Md. 304, 363 A. 2d 460 (1976); *Maryland Auto. Ins. Fund v. Stith*, 277 Md. 595, 356 A. 2d 272 (1976). Thus, where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning. *Gatewood v. State*, 244 Md. 609, 224 A. 2d 677 (1966); *Pressman v. State Tax Comm.*, 204 Md. 78, 102 A. 2d 821 (1954). In other words, a statute should be construed without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation. *Slate v. Zitomer*, 275 Md. 534, 341 A. 2d 789 (1975).

Nothing appears in the legislative history of Art. 31B that would even remotely suggest that the General Assembly, in authorizing a State's Attorney under § 6 (c) to request a defective delinquency examination "at any time" after conviction and sentence, but prior to six months from the

expiration of sentence, did not mean precisely what it so plainly said. That the State's Attorney may have been in possession of the information upon which he based his petition for the examination at the time of the original sentencing does not circumscribe his authority to seek the examination so long as it is done within the statutory time frame authorized by § 6 (c). Accordingly, we answer the certified question in the affirmative.

Appellant also contends that his transfer to Patuxent violated his procedural and substantive due process rights under the Fourteenth Amendment to the Federal Constitution. The certified question did not encompass either of these federal constitutional issues. The Uniform Certification of Questions of Law Act authorizes us to answer questions of *state* law which may be determinative of the cause then pending in the certifying court where there is no controlling precedent established by the Court of Appeals. Accordingly, we do not pass upon the federal constitutional issues.

> *Question of law answered as herein set forth.*