542 A.2d 429

**Arthur Watkins JOHNSON, Jr.**

v.

**STATE of Maryland.**

**No. 1369, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

June 15, 1988.

624

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief) Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. and James O. Gentry, Asst. State's Atty. for Baltimore County, on the brief, Towson, for appellee.

Before WILNER, BLOOM and ROBERT M. BELL, JJ.

BLOOM, Judge.

Appellant, Arthur Watkins Johnson Jr., was convicted at a bench trial in the Circuit Court for Baltimore County (Nickerson, J.) of possession of cocaine with intent to dis-

tribute (Md.Ann.Code art. 27, § 286), felony theft (Md.Ann. Code Art. 27, § 342), resisting arrest, and making a false statement (Md.Ann.Code art. 27, § 150). Appellant was sentenced to a fifteen year term of imprisonment for the conviction of possession of cocaine and a consecutive eight year term for the theft conviction. He also received concurrent sentences of eight years for the resisting arrest and six months for the false statement convictions.

Appellant argues that his convictions should be reversed because the evidence supporting them was insufficient. In the alternative, he requests that we vacate his sentences on the ground that Judge Nickerson based the sentences on improper considerations.

*Facts*

Kenneth Lewis testified that he owned a beige and brown 1985 Toyota Corolla automobile. The car was stolen on November 17, 1985, and he promptly reported the theft to the Baltimore County Police.

Sgt. Patrick Carlton of the Baltimore County Police was on duty in the Woodlawn area of Baltimore County on November 20, 1985. He was in plain clothes and was driving an unmarked car. Shortly after 11:00 a.m. he saw Mr. Lewis's Toyota. Because there had been "a large amount of thefts of that type of vehicle in the area," the sergeant radioed his dispatcher to check whether the car had been reported stolen. The dispatcher reported back that the car had been reported stolen. Because it is difficult for a police officer who is driving an unmarked car to stop a suspected car thief, Sgt. Carlton radioed for an officer in a marked car to help him. While waiting for the marked car to arrive, Sgt. Carlton continued following the stolen Toyota. Eventually the driver of the Toyota drove into the Woodlawn Senior High School parking lot. By that time, the marked police car had joined the pursuit, and the driver of the Toyota was motioned to stop. He did not do so, but sped away to a nearby 7–11 Store.

During the chase, Sgt. Carlton had not been able to get close enough to the Toyota to get a good enough view of the driver to identify him. But by the time the driver parked the Toyota in the 7–11 parking lot, the sergeant had been able to pull his car within inches of the Toyota. As a result, he was able to get a good view of the driver before the man alit from the Toyota and fled on foot.

Once the suspect was on foot, the officers on the scene decided that more police officers were required, and they called for additional police assistance. One of the officers who responded to that call was Detective Gus Vaselaros. The detective was driving nearby and when he received the call for help he parked his car on the Security Mall parking lot. From his position on the lot, a place not far from the 7–11 store, Detective Vaselaros watched for suspicious persons. After waiting for about fifteen minutes, the detective saw the appellant approach. The detective's suspicion was aroused because appellant matched the general description of the suspect, was walking "hastily," and "kept looking over his shoulder."

Detective Vaselaros waited until appellant approached to within 30–40 feet, then got out of his car, identified himself as a police officer, and told appellant he wanted to speak with him. Instead of stopping, appellant began to run. The detective pursued and, after a short foot chase, caught appellant and forced him to the ground. Appellant continued to resist and struck the detective in the stomach and again in the chest. Despite his resistance, appellant was subdued and was then formally arrested.

In the course of handcuffing appellant, Detective Vaselaros felt some objects in appellant's pockets. Searching appellant, the detective found several glassine bags, which contained ninety-five capsules of cut cocaine with a street value of between $1,500 and $2,000. Appellant was then returned to the 7–11 store, where Sgt. Carlton identified him as the man he had seen driving the stolen Toyota.

Appellant was taken to the police station, where he was given a routine "in-processing," in the course of which appellant was asked a series of questions. In response to those questions, appellant gave a false name, an incorrect date of birth, and two different fictitious addresses; he also falsely stated that he had no prior arrests. The processing officer attempted to verify the information given him by appellant but, of course, was unable to do so. The deception was short-lived; when appellant was fingerprinted the police learned his true identity and that he had a prior record.

### Sufficiency

Appellant argues that the evidence was insufficient to prove any of the charges against him. He presents a different reason for insufficiency of evidence for each of the convictions.

▮▮ Appellant's first claim is that the evidence was insufficient to prove he committed the crime of possession of cocaine with intent to distribute. According to appellant, the State failed to prove the element of *intent to distribute* because he, appellant, testified that he intended to consume the 95 capsules himself. Judge Nickerson was at liberty to believe or disbelieve that testimony. *Nichols v. State,* 5 Md.App. 340, 351, 247 A.2d 722 (1968), *cert. denied,* 253 Md. 735 (1969). The quantity of drugs found on appellant's person provided, in itself, sufficient evidence to prove the element of intent to distribute, *Anaweck v. State,* 63 Md. App. 239, 492 A.2d 658, *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985). Accordingly, we reject appellant's contention that the evidence was insufficient to prove the crime of possession of cocaine with intent to distribute.

▮▮ We next consider the theft charge. Appellant asserts that his conviction for this charge was based on Sgt. Carlton's eyewitness identification. He contends that Judge Nickerson should have declined to accept the sergeant's testimony because "the vagaries of eyewitness identification are well known." There is no merit to this argu-

ment. The law clearly recognizes that, if believed by the fact-finder, identification by one eyewitness is sufficient to prove criminal agency. *Branch v. State,* 305 Md. 177, 502 A.2d 496 (1986). The matter of credibility is for the fact-finder alone to decide. *Id.* at 184, 502 A.2d 496. Appellant's assertion that the evidence was insufficient to prove the crime of theft is without merit.

■ With respect to his conviction for resisting arrest, appellant asserts that the evidence was insufficient because Detective Vaselaros lacked probable cause to arrest him. We have set forth above the circumstances leading to appellant's arrest, and no useful purpose would be served in reciting those facts again. We believe the facts show that Detective Vaselaros had probable cause to arrest appellant, *i.e.,* reasonable grounds to believe that appellant was guilty of theft. *See Parker v. State,* 66 Md.App. 1, 502 A.2d 510, *cert. denied,* 306 Md. 70, 507 A.2d 184 (1986). The arrest being lawful, the evidence was unquestionably sufficient to prove appellant committed the crime of resisting arrest.

Lastly, we consider whether the evidence was sufficient to prove appellant committed the crime of making a false statement. On the basis of the lies appellant told the processing officer at the police station, he was charged with and convicted of violating Md.Ann.Code, art. 27, § 150 (1987 Repl.Vol.), which provides:

Any person who makes a false statement, report or complaint, or who causes a false statement, report or complaint to be made, to any peace or police officer of this State, or of any county, city or other political subdivision of this State, knowing the same, or any material part thereof, to be false and with intent to deceive and with intent to cause an investigation or other action to be taken as a result thereof, shall be deemed guilty of a misdemeanor and upon conviction shall be subject to a fine of not more than five hundred dollars ($500.00), or be imprisoned not more than six (6) months, or be both fined and imprisoned, in the discretion of the court.

In this appeal, appellant contends that the evidence presented at trial was insufficient to convict him of violating § 150. Specifically, he asserts that the statute is not directed at his conduct—giving false answers to questions propounded by the police—but is aimed at the making of false reports of crimes, causing the police to act upon those reports and thereby waste the time and money of the public. To consider that contention, we must examine and construe § 150.

The cardinal rule in the construction of statutes is to effectuate the intent of the Legislature. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987); *Baltimore Bldg. & Const. Trades Council v. Barnes,* 290 Md. 9, 427 A.2d 979 (1981); *Montgomery County v. Lindsay,* 50 Md.App. 675, 440 A.2d 411 (1982). In order to do so, a court should consider the object or purpose to be attained by the statute, *Haskell v. Carey,* 294 Md. 550, 451 A.2d 658 (1982); *State v. Berry,* 287 Md. 491, 413 A.2d 557 (1980); *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978), and the evils or mischief sought to be remedied, *State v. Fabritz,* 276 Md. 416, 348 A.2d 275 (1975), *on remand,* 30 Md.App. 1, 351 A.2d 477, *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976); *Mackie v. Mayor and Com'rs of Town of Elkton,* 265 Md. 410, 290 A.2d 500 (1972); *Department of Tidewater Fisheries v. Sollers,* 201 Md. 603, 95 A.2d 306 (1953), and so construe the statute as to carry out and effectuate, or aid in, the general purposes and policies thereof, *Comptroller of Treasury v. John C. Louis Co., Inc.,* 285 Md. 527, 404 A.2d 1045 (1979); *Guy v. Director, Patuxent Inst.,* 279 Md. 69, 367 A.2d 946 (1977); *State v. Wagner,* 15 Md.App. 413, 291 A.2d 161 (1972), and suppress the mischief and advance the remedy. *Parkinson v. State,* 14 Md. 184 (1859). If a statute is susceptible of more than one construction, it should, if possible, be given that construction which will effectuate or carry out its purpose or object, *Harbor Island Marina, Inc. v. Board of County Com'rs of Calvert County,* 286 Md. 303, 407 A.2d 738 (1979); *Comptroller v. Mandel Re-election Com.,* 280 Md.

575, 374 A.2d 1130 (1977); *Smith v. Higinbothom,* 187 Md. 115, 48 A.2d 754 (1946), and it should not be given a construction that would do more than effect the legislative object or purpose. *Pennsylvania R.R. Co. v. Lord,* 159 Md. 518, 151 A. 400 (1930); *First Mortg. Bond Homestead Ass'n v. Baker,* 157 Md. 309, 145 A. 876 (1929); *Prince George's County v. Bahrami,* 33 Md.App. 644, 365 A.2d 343 (1976), *cert. denied,* 279 Md. 681 (1977). This is especially true when a court is construing a penal statute, which, according to well established case law, is to be strictly construed. *State v. Fabritz, supra, State v. Fleming,* 173 Md. 192, 195 A. 392 (1937); *Ruth v. State,* 20 Md. 436 (1864). Strict construction, relative to a penal statute, means a construction favorable to the accused, *Weinecke v. State,* 188 Md. 172, 52 A.2d 73 (1947), and against the State, *Wanzer v. State,* 202 Md. 601, 97 A.2d 914 (1953); *Wright v. State,* 24 Md.App. 309, 330 A.2d 482 *cert. denied,* 274 Md. 733 (1975). In short, the spirit or intention of the statute should control a court's construction of that statute. *Welsh v. Kuntz,* 196 Md. 86, 75 A.2d 343 (1950); *Smith v. Higinbothom, supra; City of Hagerstown v. Littleton,* 143 Md. 591, 123 A. 140 (1923).

It is with those principles of statutory construction in mind that we now proceed to examine § 150, to determine what evil or mischief its passage was intended to suppress.

The genesis of § 150 is to be found in the British case of *The King v. Manley,* [1933] 1 K.B. 529 (C.C.A.1932). In that case, Elizabeth Manley had made a report to the police that she was robbed. Her report included a description of the alleged robber. Because of her report, the police began an investigation, which included placing under suspicion certain individuals who matched the alleged robber's description. The report was later determined to be false, and Ms. Manley was charged with a criminal offense, to-wit, that her false report caused police officers to devote their time and services to the investigation of false allegations which deprived the public of the services of the police and rendered subjects of the king liable to suspicion, accusation,

and arrest. The indictment of Ms. Manley concluded with the allegation that her behavior amounted to the unlawful effect of a public mischief.

Ms. Manley argued that the offense charged in the indictment was not one known to the law. The Central Criminal Court held that, as a matter of law, the indictment properly charged a common law misdemeanor. The Court stated that Ms. Manley's act was one that was intolerable because it caused the police to divert their resources from real crime to the false claims of crime made by one who knew the claims were false. A jury found Ms. Manley guilty of the misdemeanor.

An appeal was certified to the Court of Criminal Appeals so that it could review whether the indictment did indeed state an offense. The question posed by the Court was: "[w]hether it is true at the present day ... there is a misdemeanor of committing an act tending to the public mischief." The appeals Court held that the question should be answered in the affirmative. It further held that the evidence of Ms. Manley's act constituted the misdemeanor of public mischief because the "police were led to devote their time and services to the investigation of an idle charge, and ... that members of the public or at any rate those of them who answered a certain description, were put in peril of suspicion." 1 K.B. at 534–35 (1933).

The *Manley* decision met with considerable criticism—not with the notion that the giving of false reports to the police was or ought to be criminal, but with the idea of a court declaring behavior criminal that was not made criminal by statute. *See, e.g., Regina v. Newland,* [1954] 1 Q.B. 158 (C.C.A.1953); Model Penal Code § 241.5, Comment at 158–162 (1980); Model Penal Code, Comment on § 208.24 at 144–45 (Tentative Draft No. 6 1957); Brumbaugh, *A New Criminal Code for Maryland?,* 23 Md.L.Rev. 1, 34 n. 103 (1963). In response to that criticism, the drafters of the Model Penal Code, in 1957, began to circulate a draft of a Model Statute that would codify the *Manley* decision. *See,* Model Penal Code, § 208.24 (Tentative Draft No. 6 1957).

Subsection (1) of § 208.24 would make it a misdemeanor for one falsely to implicate another person in a crime; subsection (2) would make it a misdemeanor for one to make a false report to the police, or furnish information relating to an offense when that person knew he had no such information. (Both of those sections were later adopted, in an amended form, in the Model Penal Code. *See*, Model Penal Code, § 241.5.)

House Bill No. 248, as introduced by then Delegate Marvin Mandel on 28 January 1957, proposed to add to the Maryland Code a new criminal law somewhat at variance with the Model Penal Code but generally in accord with the *Manley* case. *1957 Maryland House Journal*, p. 242. The relevant portion of H.B. 248 provided:

> Any person who makes a false statement, report or complaint, or who causes a false statement, report or complaint to be made, to any peace or police officer of this State, or of any county, city or other political subdivision of this State, knowing the same, or any material part thereof, to be false and with intent to deceive *or* with intent to cause an investigation or other action to be taken as a result thereof, shall be deemed guilty of a misdemeanor and upon conviction shall be subject to a fine of not more than Five Hundred Dollars ($500.00), or be imprisoned not more than six (6) months, or be both fined and imprisoned, in the discretion of the court.

1957 Md. Laws ch. 549 (emphasis added).

On 12 February 1957 the bill was passed and sent to the Senate for its consideration. *1957 Maryland House Journal*, p. 405. In the Senate, the bill was referred to the Committee on Judicial Proceedings, *1957 Maryland Senate Journal*, p. 323, which amended the bill by striking out the emphasized "or" and substituting for it the word "and." *Id.* at 744. On 13 March 1957, the bill was amended, passed, and returned to the House for its approval of the Senate amendment. *Id.* at 794. The House promptly concurred with the Senate Amendment, *1957 Maryland House*

*Journal,* pp. 1035–36, and the bill became law on April 10, 1957. 1957 Md. Laws. ch. 549.

As is apparent from the initial bill, the law would have made it a misdemeanor to lie to a police officer either with an intent to deceive *or* with an intent to cause an investigation or other similar action to be taken. As amended by the Senate, and finally enacted, however, the statute makes it a crime for an individual to lie to a police officer only if that individual has an intent to deceive coupled with an intent to cause an investigation or other similar action to be taken as a result of the lie.

Unquestionably, § 150 criminalizes the conduct that was the subject of the decision in *The King v. Manley,* [1933] 1 K.B. 529, 534–35 (C.C.A.1932) (making a false statement or report to the police about a crime, thereby causing the police "to devote their time and services to the investigation of [the] idle charge" constitutes a misdemeanor in the nature of a public mischief). *See also,* Brumbaugh, *supra,* 23 Md.L.Rev. at 34 n. 103 (*Manley* offense is covered by Md.Ann.Code, art. 27, § 150). The question before us is whether the General Assembly, in enacting § 150, intended to criminalize conduct other than that which was declared in *Manley* to constitute a punishable public mischief.

The reported Maryland cases comport with the concept of § 150 as a codification of *Manley.* In *Durkin v. State,* 284 Md. 445, 397 A.2d 600 (1979), the Court of Appeals characterized § 150 as a statute which makes it a crime to "knowingly fil[e] a false police report...." 284 Md. at 454 n. 1, 379 A.2d 600. In *Thomas v. State,* 9 Md.App. 94, 262 A.2d 797 *cert. denied,* 258 Md. 731 (1970), we had occasion to apply § 150 to a set of facts and stated that the statute would produce a conviction for a false report when a person:

 1) makes or causes to be made a false statement, report or complaint

 2) to any police officer of this State, or of any county, city or other political subdivision thereof

3) knowing the same, or any material part thereof, to be false, and

4) with intent:

 a) to deceive, and

 b) to cause an investigation or other action to be taken as a result thereof.

9 Md.App. at 100, 262 A.2d 797.

The facts of *Thomas* were that on 15 November 1968 an officer of the Baltimore City Police Department was notified to go to a hospital to investigate a report of a shooting. When the officer arrived at the hospital, he met the appellant who told the officer that he had been shot. The appellant related that he was walking down a street when a car passed by him and an occupant of the car fired shots towards him. He claimed he felt a sharp pain in his foot; that he did not pay any attention to the pain; that, instead, he continued up the street, went into a bar, and began to dance. After an hour of dancing, he claimed, his foot began to hurt and he noticed blood on his shoe.[1] Thereupon, he went to the hospital. Based upon this report, which later proved to be a false alibi statement, the officer began an investigation of the shooting incident as reported in that false statement. In affirming appellant's conviction under § 150, we stated that the evidence showed that "appellant made a false statement to a police officer, knowing it to be false, with intent to deceive and to cause an investigation or other action to be taken as a result thereof...." 9 Md.App. at 101–102, 262 A.2d 797. Thomas's conviction for violating § 150 fits within the concept of § 150 being a codification of *Manley;* it involves an individual making a false report of a crime to a police officer who was thereby caused to begin an investigation, to the end that the public was deprived of the services of the police.

*Sine v. State,* 40 Md.App. 628, 394 A.2d 1206 (1978), *cert. denied,* 284 Md. 748 (1979), is another example of a convic-

---

1. Appellant later confessed that he shot himself in the foot during a confrontation with an individual who was killed.

tion for a violation of § 150 for conduct constituting the kind of public mischief dealt with by the *Manley* Court. In *Sine*, the accused set up a scheme to defraud an insurance company by joining with others to stage an automobile collision. As a result of the collision, an ambulance arrived and took the accused to a hospital, while, at the scene, the accused's confederates related to the police that Michael Carey, a party to the scheme, was driving the U–Haul truck and was at fault for the accident. Having attempted and failed to obtain a settlement from U–Haul's liability insurance carrier, the accused filed suit against U–Haul, but subsequently admitted that he had staged the accident with the hope of obtaining a sizeable amount of money by making a claim against U–Haul.

On the basis of his admission, Sine was convicted, *inter alia*, of violating § 150. Making a two-prong attack against that conviction, Sine first argued that the only statements made to the police were made by his friends and that those statements were factually true because the U–Haul did indeed hit the car. We held that although the statements, standing alone, were factually true, under the circumstances they were only partially true because they were employed to convey a false impression to the investigating officer. Consequently, we held those statements "false" for § 150 purposes. 40 Md.App. at 635, 394 A.2d 1206.

Sine's second attack on the conviction for violating § 150 was that he could not be convicted of making the false report because he neither told the police about the accident nor aided or abetted in making the false report to the police. Nevertheless, we affirmed the conviction because the evidence was sufficient to show that Sine participated in the staged accident and that he conspired with his friends to arrange the accident. The statements made by his friends to the police "were part and parcel" of the representation that an "actual" accident had taken place. Since violation of § 150 is a misdemeanor, all those participating in the accident scheme involving such violation, whether as princi-

pal or perpetrator, accessory before the fact, or aider and abettor, are chargeable as principals. We affirmed Sine's conviction for violating § 150. 40 Md.App. at 635-36, 394 A.2d 1206.

*Sine* is a classic example of the statutory criminalization of the type of public mischief recognized by the *Manley* Court. Sine and his cohorts made a false report concerning an accident; they knew the report was false; they intended to deceive; and they intended that the police investigate the accident. Since, like Ms. Manley, was punished for the public mischief of causing the police to divert their resources away from real incidents of crime.

We had occasion to cite § 150 in two cases involving information given by informants relative to Fourth Amendment intrusions. In each case, we held that the information given to the police by the informants was reliable, one of the factors in favor of reliability being that the informants were subjecting themselves to criminal liability under § 150 if they were lying. *See, Johnson v. State,* 50 Md.App. 584, 592, 439 A.2d 607 (1982); *Barber v. State,* 23 Md.App. 655, 665, 329 A.2d 760 (1974), *cert. denied,* 274 Md. 725 (1975). That concept of § 150 also clearly comes within the contemplation of the *Manley* decision.

It is, of course, arguable that the plain language of § 150 takes it beyond *Manley,* in that (1) *Manley* dealt only with a false *report* or *complaint* of crime whereas this statute also proscribes a *false statement,* and (2) *Manley* referred only to the mischievous intent of causing the police to *investigate* the false report whereas § 150 also covers an intent to cause "other action" to be taken as a result of the "false statement, report or complaint." But when we read the words "false statement" in the context of false "report or complaint," we question whether "false statement" was intended to mean any untrue verbal communication made under any circumstances or was intended to refer only to false statements of the same general type and made under the same general circumstances as a false report or complaint of crime. Likewise, when we read "or other action"

in the context of "intent to cause an investigation," we question whether "other action" was intended to mean *any* action of any kind, or was intended to mean only action similar in nature to an investigation. Do we give this statutory language its broadest meaning or a more restricted interpretation? We choose the latter because, as Judge Adkins pointed out in *Kaczorowski v. City of Baltimore, supra,* where a statute is susceptible of more than one meaning, we are to consider not only the literal or usual meaning of its words, but their meaning and effect in light of the setting, the objectives, and the purposes of the enactment.

■ From the legislative history of § 150,[2] we are persuaded that the General Assembly, in adopting it, had no intent to criminalize conduct other than the mischief which was the subject of the *Manley* decision, the making of false reports to the police which cause the police to conduct investigations that divert them from their proper duties of preventing crime and investigating actual incidents of crime. We shall therefore construe § 150 as intended, and apply it only to that type of mischief, the "false alarm" to the police that is analogous to the false fire alarm. Indeed, the analogy is apparent in the tentative draft of the Model

---

2. The introduction of this legislation in 1957 coincided with the circulation of the draft of the Model Penal Code in 1956–1957. A number of states have since adopted the Model Penal Code. *See, e.g.,* N.J.Stat.Ann. § 2C:28–4 (West 1982); 18 Pa.Cons.Stat.Ann. § 4906 (Purdon 1983, 1987 Cum.Supp.); Utah Code Ann. § 76–8–506 (1978). Although Utah has adopted the Model Code version, it is interesting to note that Utah deemed it necessary to adopt a statute that would punish the behavior that is complained of in the case *sub judice. See,* Utah Code Ann. § 76–8–507 (1978, 1987 Repl Vol.) ("A person commits a class C misdemeanor if, with intent of misleading a peace officer as to his identity, birthdate, or place of residence, he knowingly gives a false name, birthdate, or address to a peace officer in the lawful discharge of his official duties.") Several other states have adopted legislation criminalizing the *Manley* public mischief conduct in language more or less varying from that of the Model Penal Code. *See, e.g.,* Cal.Penal Code § 148.5 (West 1988); Fla.Stat.Ann. § 837.05 (West 1976, 1987 Cum.Supp.); Ga.Code Ann. § 16–10–26 (1984, 1987 Cum.Supp.).

Penal Code, *supra,* which placed § 208.24 (False Reports to Law Enforcement Authorities) immediately after § 208.23 (False Alarms to Agencies of Public Safety).

We also believe it appropriate to choose the narrower rather than the broader meaning of "false statement" and "other action" because, as noted *supra,* we are dealing with a penal statute which is to be *strictly* construed, *i.e.,* in a manner favorable to the accused and against the State.

In the case *sub judice,* appellant did not go to the police to give them a false statement; his purpose was not to initiate police action but, at most, to obstruct or divert an investigation already underway. True, he lied in response to questioning, but although the processing officer's brief futile attempt to verify appellant's false responses to routine booking or processing questions might be construed as an investigation or, at lest, "other action" intended to be taken as a result of the lies, it was not the kind of investigation or similar action contemplated by the statute. Furthermore, we do not believe the giving of false information in response to routine questioning by the police, even though it is likely to hinder or delay an investigation already underway, is the type of false statement, report or complaint that comes within the "false alarm" public mischief the General Assembly intended to criminalize when it enacted § 150.

Having concluded that the legislative purpose of § 150 was the suppression of such false reports of crimes that lead to wasted police investigations—the conduct determined by the *Manley* Court to be a public mischief—we hold that appellant's lies did not amount to that type of mischief and are, therefore, not punishable under this statute. Consequently, the evidence adduced in this case was insufficient to support a conviction for violating § 150, and that conviction is hereby reversed. In so holding, we express no opinion whether appellant's act of lying can be characterized as criminal. *Cf.* Md.Ann.Code, art. 27, § 27

(obstruction of justice); *Cover v. State*, 297 Md. 398, 466 A.2d 1276 (1983) (hindering a police officer in the performance of his duty). We merely hold that it did not constitute the particular crime he was accused of committing.

### Sentencing

Appellant complains that Judge Nickerson based the sentences on two impermissible considerations, *i.e.*, other criminal charges which, at the time of sentencing, had not resulted in convictions. The first of those charges involved a burglary and murder case (the Friedman case). The second charge, of which appellant was acquitted, was identified by appellant as "an attempted burglary around the time of the Friedman murder."

██ We find nothing in the record to suggest that Judge Nickerson based the sentence on the attempted burglary charge. The pre-sentence report shows simply that appellant was charged with a burglary and several related offenses, but that on March 3, 1987, he was found not guilty of those charges. Nothing of substance was said about this charge at the disposition hearing. The only comment that was made about this charge at the disposition hearing was made by the prosecutor when she was calling Judge Nickerson's attention to the pre-sentence report. In so doing, she said:

> When my office initially received the cases against Arthur Johnson we had the two daytime housebreakings, the burglary, for which he was found not guilty.

Although there is nothing in the record to indicate that Judge Nickerson based the sentence on the attempted burglary charge, the record unequivocally shows that he did consider the Friedman case.

██ A sentencing judge is vested with virtually "boundless discretion." *Logan v. State*, 289 Md. 460, 480, 425 A.2d 632 (1981). In determining a sentence, a judge should consider both the facts and circumstances of the case before him and the defendant's background. *Reid v.*

*State,* 302 Md. 811, 490 A.2d 1289 (1985). One of the factors that should be considered in reviewing a defendant's background is the defendant's prior criminal record. *Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984); *Mack v. State,* 69 Md.App. 245, 517 A.2d 108 (1986), *cert. denied,* 309 Md. 48, 522 A.2d 393 (1987). In this regard, a sentencing judge is not limited to considering only prior convictions. "It is proper for a sentencing judge to consider reliable evidence of the details and circumstances surrounding a criminal charge of which a defendant has been acquitted." *Dillsworth v. State,* 308 Md. 354, 368 n. 4, 519 A.2d 1269 (1984). When such evidence is relied upon, however, it is essential that it be "reliable." Evidence of crimes of which the accused was not convicted is generally found reliable if the defendant admits to the charges or is "identified as the perpetrator." *Smith v. State,* 308 Md. 162, 167, 517 A.2d 1081 (1986).

In the instant case, the sentencing judge was given an explanation of the Friedman case by the investigating officer. Appellant did not admit to the crime, and there was no direct evidence identifying him as the perpetrator, but there was a series of circumstances from which Judge Nickerson was asked to conclude that appellant had been involved in the Friedman case.[3] After receiving the evidence, Judge Nickerson concluded that appellant had been involved in the Friedman case, and he relied on that fact in establishing the sentence. We are now asked to decide whether that was proper.

---

**3.** We have not been asked to decide whether the information provided was adequate to establish appellant's guilt in the Friedman case and hence it is unnecessary for us to review the details provided by the State. Briefly stated, however, the State showed that a murder was committed and that there was some probability that the car used in the getaway was driven by appellant. It was also shown that appellant had committed other crimes with the men who committed the Friedman murder and that the somewhat unique *modus operandi* followed in the Friedman case was the same as that used in the other cases.

 The precise question presented to us is whether, when the State is asking a sentencing judge to consider as part of a defendant's background the fact that the defendant has committed another crime for which he has not been convicted, the State's evidence that the defendant committed the other crime is sufficiently *reliable* if the only "proof" offered to show the defendant's involvement in the crime is circumstantial evidence. In order for the State to prove a criminal charge, its evidence must convince the fact-finder beyond a reasonable doubt. When we are asked to review the sufficiency of the evidence in a criminal conviction, we recognize that the evidence may be sufficient to satisfy the "beyond a reasonable doubt" standard even if it is totally circumstantial. *Sloan v. State,* 70 Md.App. 630, 522 A.2d 1364 *cert. denied,* 310 Md. 276, 528 A.2d 1287 (1987). If circumstantial evidence can satisfy the beyond a reasonable doubt standard, it must be adequate to satisfy the reliable standard. We hold, therefore, that the State's claim that a defendant committed a crime may be deemed reliable enough to be used by a sentencing judge even though the State's evidence proving the crime is entirely circumstantial.

 Appellant also complains about the way the State proved its case. He asserts that the State used hearsay to prove his involvement in the Friedman case, and he argues that this should not have been permitted. At the sentencing hearing, appellant did not complain about the use of hearsay. Consequently, the issue has not been preserved for appellate review. Md. Rule 1086. Furthermore, as the Court of Appeals has observed, the strict rules of evidence do not apply at sentencing, *Smith v. State,* 308 Md. 162, 166, 517 A.2d 1081 (1986), so the State's presentment of hearsay at the disposition hearing provides no reason for us to vacate appellant's sentences.

 At the sentencing hearing, appellant made a motion *in limine,* requesting Judge Nickerson to exclude all evidence regarding the Friedman case. Judge Nickerson de-

nied the motion. In his brief, appellant treats the denial of the motion as a separate issue, but presents no separate argument. He merely refers to his argument regarding the propriety of considering the other crimes evidence. Consequently, Judge Nickerson's ruling on the motion *in limine* is not before us. There is, of course, no merit to this argument in any event. Since the sentencing judge may consider reliable information of commission of other crimes, he must obviously be privileged to hear the evidence in order to determine whether it is reliable.

CONVICTION FOR MAKING A FALSE STATEMENT REVERSED.

ALL OTHER JUDGMENTS AFFIRMED.

COSTS TO BE PAID FOUR–FIFTHS BY APPELLANT AND ONE–FIFTH BY BALTIMORE COUNTY.

WILNER, Judge, concurring and dissenting.

I concur in those parts of the majority opinion and mandate that affirm the judgments rendered against appellant. I dissent, however, from the reversal of appellant's conviction under art. 27, § 150. In my opinion, the majority has simply misread that statute.

Art. 27, § 150 provides, in pertinent part, that:

"Any person who makes a false statement, report or complaint, or who causes a false statement, report or ′complaint to be made, to any peace or police officer of this State, or of any county, city or other political subdivision of this State, knowing the same, or any material part thereof, to be false and with intent to deceive and with intent to cause an investigation *or other action to be taken* as a result thereof, shall be deemed guilty of a misdemeanor...."

(Emphasis added.) It is, of course, the interpretation of the emphasized phrase, "or other action to be taken," which is at the center of the controversy here.

The majority claims, with no real support, that the Legislature intended merely to codify the English case of *The*

*King v. Manley* [1933] 1 K.B. 529, 534–35 (C.C.A.1932), when it enacted § 150. Finding such an intention, the majority has limited the application of § 150 to "the making of false reports to the police which cause the police to conduct investigations that divert them from their proper duties of preventing crime and investigating actual incidents of crime." In so construing the statute, the majority either ignores or, by judicial fiat, simply excises a portion of that statute.

I agree that, when we are called upon to construe a statute, we must effectuate the intent of the Legislature. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987). I cannot agree, however, that the Legislature intended to limit § 150 to *Manley*-type situations. There is simply no support for such a conclusion.

The plain wording of § 150 does not support that intention. The statute clearly states "investigation or other action." If the Legislature had intended to limit the section to false statements that cause investigations, it could have said so. It did not have to add the additional language "or other action." From the plain wording of the statute, then, the Legislature intended to make a person criminally responsible if he or she gave a police officer a false statement with intent to deceive and with intent to cause *either* (1) an investigation or (2) other action.

Nor is there any legislative history to support the majority's conclusion that § 150 is no more than a codification of *Manley.* The majority points to the coincidence of the circulation of the Model Penal Code's 1957 Draft, which included § 241.5, and the Legislature's consideration of § 150. Section 241.5, entitled "False Reports to Law Enforcement Authorities," provides:

"(1) **Falsely Incriminating Another.** A person who knowingly gives false information to any law enforcement officer with purpose to implicate another commits a misdemeanor.

**(2) Fictitious Reports.** A person commits a petty misdemeanor if he:

(a) reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur; or

(b) pretends to furnish such authorities with information relating to an offense or incident when he knows he has no information relating to such offense or incident."

If § 241.5 is, as the majority asserts, only a codification of *Manley*, I simply point to the fact that the Legislature *did not* adopt it despite the opportunity. Rather, it wrote and passed its own, significantly different, statute. While I agree that § 150 encompasses *Manley*,[1] it also exceeds it by making criminal false statements, complaints or reports made to the police with the intent to cause them to take some type of action on it.

Not only is there no support for the majority's construction of § 150, that construction violates another canon of statutory construction. The Court of Appeals has repeatedly cautioned that we are to construe a statute, whenever reasonably possible, so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory. *Management Personnel Serv. v. Sandefur*, 300 Md. 332, 341, 478 A.2d 310 (1984).

---

**1.** Arguably, § 151 is more applicable to *Manley* situations than § 150. Section 151 provides:

"Any person who makes a false statement or report of the commission of a crime or of the existence of any condition imminently dangerous to public health or safety, or causes such a false statement or report to be made, to any official or agency of this State, or of any county, city or other political subdivision of this State, knowing the same, or any material part thereof, to be false and with intent that such official or agency investigate, consider or take action in connection with such statement or report, shall be deemed guilty of a misdemeanor and upon conviction shall be subject to a fine of not more than five hundred dollars ($500.00), or be imprisoned not more than six (6) months, or be both fined and imprisoned, in the discretion of the court."

To construe § 150 to include false statements made to induce police action other than an investigation is entirely reasonable. The Maryland Code is replete with statutes prohibiting the making of false statements in certain situations. See Md.Code Ann. Health Occ. art., §§ 2–403, 12–702, 14–703, 18–404; Md.Code Ann.Fin.Inst. art., §§ 13–140, 13–233.4; Md.Code Ann.Transp. art., § 20–108; Md.Code Ann. art. 56, § 603; Md.Code Ann. art. 95A, § 17.

With this construction in mind, we turn to the question of whether appellant's action violated § 150. The processing officer testified that he spent "45 minutes to a hour to track down all the different names and dates of birth he gave us." The only possible reason for appellant's falsehoods was to hinder the police. While not all lies which cause police action may necessarily fall within the ambit of the statute, appellant's lies did cause the type of action, if not an investigation, contemplated by § 150.