629 A.2d 731

STATE of Maryland

v.

William THOMPSON.

No. 2, Sept. Term, 1993.

Court of Appeals of Maryland.

Aug. 26, 1993.

2

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen.), both on brief, Baltimore, for appellant.

Richard M. Karceski (White & Karceski) both on brief, Towson, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The issue in this case is whether a defendant, who is committed to a drug treatment center pursuant to Maryland Code (1982, 1990 Repl.Vol.), § 8–507 of the Health General Article and successfully completes the program of treatment, is required to serve the balance of the mandatorily imposed minimum sentence of incarceration prescribed by Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 286(c)(1). We answer, "no," and, so, affirm the judgment of the circuit court.

## I.

William Thompson, the appellee, a repeat drug offender, was convicted in the Circuit Court for Baltimore County of conspiracy to violate the controlled dangerous substances laws, conspiracy to distribute cocaine, conspiracy to possess cocaine with intent to distribute, conspiracy to possess cocaine, and conspiracy to solicit the distribution of cocaine. Counts three, four and five were merged into counts one and two. The court imposed concurrent sentences of fifteen years' incarceration on each count, ten years of which, pursuant to Article 27, section 286(c)(1), were to be served without parole. The balance of the sentences were suspended and the appellee was placed on five years probation. As a condition of release, the appellee was committed to Second Genesis, a drug treatment program. The probation order required the appellee, upon release, to submit to periodic urinalysis as the Department of Parole and Probation requires and participate in such after care programs as it may recommend.

The State urged at sentencing that, if the appellee were committed for treatment, upon its completion, he be remanded to the Department of Correction to serve the balance of the mandatory minimum sentence the court imposed, arguing that treatment "does not allow him to avoid the 10 years without parole." The court rejected the argument and the State appealed. Prior to consideration of this case by the Court of Special Appeals, we issued, on our own motion, a writ of

4

certiorari to review this important issue.   329 Md. 601, 620 A.2d 940 (1993).

## II.

### A.

Article 27, section 286(c) provides:

(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section, or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section shall be sentenced to imprisonment for not less than 10 years if the person previously has been convicted:

(i) Under subsection (b)(1) or subsection (b)(2) of this section;

(ii) Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section;  or

(iii) Of an offense under the laws of another state, District of Columbia or United States that would be a violation of subsection (b)(1) or subsection (b)(2) of this section if committed in this State.[1]

(2) The prison sentence of a person sentenced under subsection (b)(1) or subsection (b)(2) of this section, or of conspiracy to violate subsection (b)(1) or (b)(2) of this section or any combination of these offenses, as a second offender may not be suspended to less than 10 years, and the person may be paroled during that period only in accordance with Article 31B, § 11 of the Code.

(3) This subsection does not prevent, prohibit, or make ineligible a convicted defendant from participating in the rehabilitation program under Title 8, Subtitle 5 of the

---

1.   Subsections (b)(1) and (b)(2) provide that engaging in conduct proscribed by Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 286(a), which includes the conduct of which the appellee was convicted, is a felony and they prescribe penalties therefor.

Health–General Article, because of the length of sentence, if imposed under subsection (b)(1) of this section.[2]

Section 8–507, in pertinent part, provides:

(a) *In general.*—If a court finds in a criminal case that a defendant has an alcohol or drug dependency, the court may commit the defendant as a condition of release, after conviction, or at any other time the defendant voluntarily agrees to treatment to the Department for inpatient, residential, or outpatient treatment.

(b) *Prerequisites.*—Before a court may commit a defendant to the Department for treatment, the court shall:

(1) Offer the defendant the opportunity to receive treatment; and

(2) Obtain the written consent of the defendant:

(i) To receive treatment; and

(ii) For the reporting of information back to the court; and

(3) Consult with the Administration.

\*     \*     \*     \*     \*     \*

(f) *Withdrawal of consent.*—(1) A defendant's withdrawal of consent to treatment shall be promptly reported to the court.

(2) The defendant shall be returned to the court within 7 days for further proceedings.

(g) *Habeas Corpus.*—A defendant who is committed for treatment under this section may question at any time the legality of the commitment by a petition for a writ of habeas corpus.

(h) *Duration; extension; termination.*—(1) A commitment under this section shall be for at least 72 hours and not more than 1 year.

---

**2.** Subsection 286(c)(3) does not refer to subsection (b)(2). Thus, a drug offender convicted for the second time of a violation of that subsection, which involves PCP, is not eligible for treatment pursuant to § 8–507.

(2) On good cause shown by the Administration, the court may extend the time period for providing the necessary treatment services in increments of 6 months.

(3) Except during the first 72 hours after commitment, the Director or a designee of the Director may terminate the commitment if the Director or the designee determines that:

(i) Continued commitment is not in the best interest of the individual; or

(ii) The individual is no longer amenable to treatment.

(i) *Release.*—When an individual is to be released from a commitment under this section, the Director or the Director's designee shall consult with the court to determine if the individual is to be returned to the court.

(j) *Leaving facility without authorization.*—In the event an individual committed under this section leaves a treatment facility without authorization, the responsibility of the Department is limited to the notification of the court that committed the individual as soon as it is reasonably possible.

(k) *Obligation of Administration.*—Nothing in this section imposes any obligation on the Administration:

(1) To treat any defendant who knowingly and willfully declines to consent to further treatment; or

(2) In reporting to the court under this section, to include an assessment of a defendant's dangerousness to one's self, to another individual, or to the property of another individual by virtue of a drug or alcohol problem.

(*l*) *Credit against sentence.*—Any time served by a criminal defendant held for evaluation or committed for treatment shall be credited against the sentence imposed by the court.

## B.

The issue here presented involves discerning legislative intent. Our inquiry into legislative intent begins with the words of the statute to be interpreted and, ordinarily, also

ends there. *Harris v. State,* 331 Md. 137, 145, 626 A.2d 946, 950 (1993). When the words of the statute are clear and unambiguous, we need not go further. *G. Heileman Brewing Co. v. Stroh Brewery Co.,* 308 Md. 746, 755, 521 A.2d 1225, 1230 (1987); *Comptroller of Treasury v. Fairchild Industries, Inc.,* 303 Md. 280, 284, 493 A.2d 341, 343 (1985). We are not, however, precluded from looking at the purpose of the statute, "other material that fairly bears on the fundamental issue of legislative goal or purpose," *Harris,* 331 Md. at 146, 626 A.2d at 950, quoting *Wynn v. State,* 313 Md. 533, 539, 546 A.2d 465, 468 (1988), quoting *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 632–33 (1987) and comparing the results. *Sabatier v. State Farm Mut. Auto Ins. Co.,* 323 Md. 232, 250, 592 A.2d 1098, 1107 (1991); *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 485 (1991); *Baltimore County Coalition Against Unfair Taxes v. Baltimore County,* 321 Md. 184, 203, 582 A.2d 510, 519 (1990); *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989); *Kaczorowski,* 309 Md. at 514–15, 525 A.2d at 632–33.

In this case there are two statutes to be construed. Two statutes which deal with the same subject matter are *in pari materia,* should be construed together and, to the extent possible, harmonized. *State v. Bricker,* 321 Md. 86, 93, 581 A.2d 9, 12 (1990); *In re Criminal Investigation No. 1–162,* 307 Md. 674, 690, 516 A.2d 976, 982 (1986); *Unnamed Physician v. Commission on Medical Discipline,* 285 Md. 1, 10, 400 A.2d 396, 401, *cert. denied,* 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979). Full effect should be given to each, *Bricker,* 321 Md. at 93, 581 A.2d at 12; *Farmers & Merchants Nat'l Bank of Hagerstown v. Schlossberg,* 306 Md. 48, 61, 507 A.2d 172, 178–79 (1986); *Willis v. State,* 302 Md. 363, 375, 488 A.2d 171, 178 (1985); *Management Personnel Servs., Inc. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310, 314 (1984); *Bd. of Educ. of Garrett County v. Lendo,* 295 Md. 55, 62, 453 A.2d 1185, 1189 (1982), neither adding, nor deleting, words to obtain a meaning not otherwise evident by the words actually used. *Lendo,* 295 Md. at 63, 453 A.2d at 1189; *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 389, 444 A.2d 1024, 1027 (1982); *Pappas v. Pappas,*

287 Md. 455, 465, 413 A.2d 549, 553 (1980). Moreover, each statute must be given a reasonable interpretation, not one that is illogical or incompatible with common sense. *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195, 1196 (1985); *Erwin and Shafer, Inc. v. Pabst Brewing Co.,* 304 Md. 302, 315, 498 A.2d 1188, 1194 (1985).

### III.

The State maintains that the trial court erred when it refused to order that, upon completion of the drug treatment program to which he was ordered committed, the appellee be remanded to the Department of Correction to serve the balance of the ten year sentence mandated by section 286(c)(1) and properly imposed by the court. It asserts that an interpretation of section 8–507 that would permit a defendant to avoid the mandatory sentence prescribed by Art. 27, section 286(c)(1) and (2) simply by being committed to a drug treatment center and successfully completing the program there would constitute "a most egregious flout of legislative intent, in the face of plain language in a statute evidencing an intent to deal harshly with repeat drug offenders." A proper interpretation of section 8–507 and, indeed, the only reasonable one, the State argues, is that "the time spent in rehabilitation by a repeat offender sentenced under Article 27, section 286(b)(1) should be followed by a return of that offender to the court for a determination of the amount of time remaining to be served on the mandatory term imposed under section 286(c)(1)." In other words, the State's position is that, while the defendant is entitled to credit for time spent in drug treatment, once that credit is given, he must serve the balance of his sentence. That is consistent, the State contends, with the legislative intention that a repeat drug offender sentenced under section 286(b)(1) be both eligible for drug treatment and subject to the harsh penalty prescribed for such violations.

Conceding that section 286(c) requires a second time drug offender to be sentenced to imprisonment for at least ten years, without parole, the appellee urges that commitment to a

drug treatment center and completion of the treatment program may be in lieu of the mandatory sentence. As the appellee sees it, the trial court is clothed with discretion to determine the proper disposition for a repeat offender who has successfully completed the drug treatment program to which he or she had been committed. That discretion extends to ordering the offender to serve all, or a portion of, the balance of the mandatory sentence or to order his or her release on probation, on such terms as the court may prescribe.

## IV.

### A.

Article 27, section 286(c)(1) mandates that repeat drug offenders convicted a second time of violating sections 286(b)(1) or (2) be sentenced to imprisonment for at least ten years. Subsection (c)(2) makes clear that the minimum 10 year sentence shall be without parole. Subsection (c)(3) on the other hand, does not make a repeat drug offender sentenced pursuant to section 286(b)(1) ineligible to participate in the drug rehabilitation program under section 8–507.

■ The Court of Special Appeals, in *Collins v. State*, 89 Md.App. 273, 598 A.2d 8 (1991), considered whether a repeat drug offender sentenced pursuant to section 286(b)(1) remained eligible to participate in drug rehabilitation prescribed by section 8–507, notwithstanding the mandatory minimum sentence mandated by section 286(c)(1). It held that a trial court has the discretion, under section 286(c)(3), to commit a second time drug offender to treatment prior to the imposition of the mandatory sentence.[3] *Id.* at 288, 598 A.2d at 17. To

---

3. In restating its holding, the Court of Special Appeals said "that the trial court erred in holding that it had no discretion to sentence appellant to drug treatment *in lieu of* the mandatory sentence." *Collins v. State*, 89 Md.App. 273, 293, 598 A.2d 8, 17 (1991) (emphasis added). As will become apparent *infra*, that comment was not intended to resolve the relationship between drug treatment and the mandatory sentence.

arrive at this holding, the court reviewed the legislative history of sections 286(b) and (c). It concluded from that review:

Prior to 1988, all subsequent offenders were treated equally with respect to both sentencing and eligibility for drug treatment. In amending § 286, the Legislature increased the mandatory penalties for third and fourth offenders and eliminated their eligibility for drug treatment. The mandatory sentence for second offenders, however, remained the same and the only conclusion that can be drawn from the retention of the language now in subsection (c)(3) is that a second offender's eligibility for drug treatment remained unchanged as well. To read the statute differently would render the current version of subsection (c)(3) meaningless.

*Id.* at 292, 598 A.2d at 17 (citation omitted). Since, in other words, section 286(c)(3), unlike sections 286(d) and (e), pertaining to third and fourth time drug offenders, does not exclude commitment for treatment pursuant to section 8–507, as an option, when, pursuant to section 286(c)(1), a sentence is imposed on a second time drug offender under section 286(b)(1), the trial court, in its discretion, may commit such second time drug offenders to drug treatment centers. We agree with this analysis.

The State does not challenge the intermediate appellate court's analysis and, in fact, like the appellee, concedes that the trial court's exercise of discretion to commit the appellee to Second Genesis was proper. The issue, then, is whether the treatment ordered is in lieu of, or, as the State argues, in addition to, the mandatory sentence.

■ The Court of Special Appeals in *Collins,* while acknowledging it as a potential issue, did not address "whether the mandatory sentence must be served following … treatment." *Id.* at 293 n. 8, 598 A.2d at 18 n. 8. It observed, we think correctly, "[b]ecause appellant may not be committed for treatment and, even if she is, there is no guarantee she will complete the program successfully, we express no opinion as to the proper disposition of her mandatory sentence if she should, in fact, complete a drug treatment program successful-

ly." *Id.* at 294 n. 8, 598 A.2d at 18 n. 8. We hold that, when a defendant successfully completes the drug treatment program, whether he or she must serve the remainder of the mandatory ten year sentence, imposed pursuant to section 286(c)(1), is within the trial court's discretion to determine.

Once it has been determined that section 286(c)(3) provides the trial court with discretion to utilize section 8–507 as a sentencing option, what happens to a defendant committed pursuant to that section is controlled by the procedure therein prescribed. The language of section 8–507 is clear and unambiguous. The court may commit a defendant with a drug dependency to the Department of Health and Mental Hygiene, *see* § 1–101(c), for inpatient, residential, or outpatient treatment. Section 8–507(a). The minimum commitment is 72 hours and the maximum, one year, and such additional period, in increments of six months, as to which the Alcohol and Drug Administration, *see* § 8–101(b), is able to show good cause. Section 8–507(h). The court may not commit any defendant prior to consulting with the Administration or who has not consented in writing to treatment and to the reporting of information back to the court. Section 8–507(b). The Director of the Alcohol and Drug Abuse Administration, *see* § 8–101(h), or his or her designee, must "consult with the court to determine if [an individual who is to be released from commitment] is to be returned to the court." Section 8–507(i). Thus, consultation with the court is required when the Director or a designee terminates a defendant's commitment upon determining that the defendant is no longer amenable to treatment or that continued commitment is not in the defendant's best interest. Section 8–507(h)(3). Because it may not be in the best interest of a defendant who successfully completes the treatment program to have his or her commitment continued, in addition to the situation in which treatment is unsuccessful, section 8–507(h)(3)(i) necessarily has applicability in the situation in which the defendant successfully completes the treatment program. When a defendant leaves a treatment center without authorization, the Department must notify the committing court "as soon as it is reasonably possible." Section

8–507(j). Moreover, the Administration is not obliged to include in any report to the court an assessment of the defendant's dangerousness either to himself or to the person or property of others as a result of his drug dependency. Section 8–507(k). Finally, a criminal defendant committed for treatment is entitled to have the time spent in the treatment facility credited against the sentence imposed by the court. Section 8–507(*l* ).

Section 8–507(i) does not distinguish between the successful completion of treatment and the termination of a commitment before treatment is complete. It is clear from its terms, however, that, in neither circumstance is it mandatory that the defendant be returned to court or that further proceedings occur; rather, it is only necessary that the Director consult with the court to determine what the court's wishes are in that regard. This is to be contrasted with section 8–507(f). That section recognizes that a defendant may, after commitment, withdraw his consent to treatment. Should that occur, it requires the prompt reporting of that fact to the court *and* the return of the defendant "to the court within seven days *for further proceedings* ". Section 8–507(f)(2) (emphasis added).

Reading section 8–507(i) with section 8–507(*l* ), the State asserts, leads to the conclusion that "the time spent in rehabilitation by a repeat drug offender sentenced under Art. 27, § 286(b)(1) should be followed by a return of that defendant to the court for a determination of the amount of time remaining to be served on the mandatory term imposed under section 286(c)(1)." To arrive at that conclusion, the State must read subsection (i) contrary to its plain language, to require a defendant who is to be released from commitment to be returned to court. This reading of subsection (i) attributes an intention to the Legislature that the Legislature plainly did not have. As demonstrated by the fact that the Legislature in section 8–507(f) was explicit in requiring that a defendant be returned to the court for further proceedings when the defendant withdraws consent to treatment, the Legislature knows how to prescribe that drug treatment is in addition to, rather than in lieu of, the mandatory sentence set forth in Art. 27

§ 286(c)(1). That only consultation with the court, and not a return to court for the service of the balance of the mandatory sentence, is required is stated clearly and unambiguously; to interpret section 8–507 as requiring more is to give it a strained construction. Review of the legislative history of section 8–507 confirms the accuracy of this result.

### B.

By Ch. 376, Acts of 1966, recognizing that drug addiction is a disease which should be treated and seeking to provide "a better means of dealing with that problem . . .," the Legislature, enacted Maryland's first drug treatment statute. Codified in Maryland Code (1957, 1967 Repl. Vol), Art. 27, § 306B, it provided:

> Notwithstanding the provisions of this subheading, a court after conviction may suspend the sentencing of any narcotic addict found guilty of violating the provisions of this subheading and commit to any appropriate institution, hospital or any other facility in the State for the treatment of narcotic addicts. The addict shall remain in the institution or hospital until the director of the facility determines that he is medically eligible to be released in the community to an authorized aftercare program. If the released addict reverts to the use of narcotic drugs, this shall constitute a violation of his terms of release, and he shall be returned to the facility, where he was originally admitted or shall serve the remainder of his term in the appropriate penal or correctional institution, at the court's discretion.

Section 300, which prescribed the penalty for unlawful possession and control of narcotics, at that time provided, in part, that "[f]or a second offense . . . the offender shall be fined not more than two thousand dollars ($2000.00) and be imprisoned not less than five or more than ten years." Responding to the argument that, because section 306B authorized the suspension of the sentence of a narcotics offender, including a second offender, in favor of commitment for treatment, a trial court could impose a sentence less than the mandatory minimum set

out in section 300, the Court of Special Appeals, speaking through then Chief Judge Murphy, opined

that the Legislature intended that the statutory minimum of five years imprisonment for a second offender under Section 300 constitute a mandatory sentence which the court could suspend under Section 306B, where it deemed treatment, rather than incarceration, to be the appropriate disposition. The preamble to Section 306B (see Chapter 376 of the Acts of 1966) contains a number of recitals wherein the Legislature purports to recognize that drug addiction may be a sickness and that criminal sentences for addicts may interfere with their proper treatment and rehabilitation. The Legislature did not, however, repeal Section 300 or in any way indicate an intention to abolish incarceration in a penal institution as a means of dealing with violators of the narcotics laws. By Section 306B, the Legislature provided statutory machinery whereby the sentencing judge, in dealing with second offenders, was authorized, after imposing sentence under Section 300, to suspend it and direct that the offender be referred for treatment at an appropriate hospital or other institution.

*Woodfork v. State*, 3 Md.App. 622, 625, 240 A.2d 314, 316 (1968). It is significant that a defendant who did not successfully complete treatment was required to serve the remainder of his or her term of imprisonment.

In 1969, the General Assembly repealed section 306B and enacted Maryland Code (1957, 1967 Repl.Vol., 1969 Cum. Supp.), Art. 43B, the Comprehensive Drug Abuse Control and Rehabilitation Act. Ch. 404, Acts of 1969. Like section 306B, among its purposes was the rehabilitation of drug addicts. *See* Preamble, Ch. 404, Acts of 1979; Art. 43B, § 1(c). Section 12, which pertains to the commitment for treatment of a defendant convicted of a crime, and section 15, pertaining to defendants who successfully complete treatment, are relevant to our inquiry. The authority of the court to order that civil commitment proceedings be instituted as well as the definition of ineligible persons were addressed in section 12(a). It provided:

Upon conviction of a defendant of any crime in any court of this State having competent jurisdiction, if it appears to the presiding judge by any reason that the defendant may be a drug addict, and the judge elects to proceed herein, such judge shall adjourn the proceedings, suspend the imposition of sentence, and order the State's attorney to file a petition in the circuit court for that judicial district instituting a civil proceeding for the commitment of the defendant to the care and custody of the Authority. However, no person may be eligible for commitment under this section if he is presently serving a sentence in a correctional institution, is awaiting a sentencing on a conviction of a crime punishable by more than ten years imprisonment or death, except larceny, or has other criminal charges pending against him.[4]

Section 12 also addressed what was to occur when a committed defendant was returned to court having unsuccessfully completed treatment or been found not to be a fit subject for treatment. Although the court was authorized to commit a defendant for a period of up to ten years, the period of initial inpatient care could not exceed three years unless the court affirmed the commitment after receiving advice from the Drug Abuse Authority. Subsection (c). On the advice of the Authority, the court could terminate the commitment during that initial period. *Id.* Also, the Drug Abuse Authority was authorized to return a defendant committed to it for inpatient hospitalization to the committing court after 60 days if it determined that the defendant was not a fit subject for confinement or treatment. Subsection (d). When a commitment was terminated, whether because treatment was unsuccessful or the defendant was not a fit subject for treatment, the defendant was referred "to the court of his criminal conviction for the resumption of the pending criminal proceedings." Subsections (c) and (d). Subsection (e) provided that, when a defendant is returned to the court pursuant to subsec-

---

4. By Ch. 184, Acts of 1972, the second sentence was amended to provide for the situation where the defendant notifies the court of his or her desire to be committed.

tions (c) and (d), "and in any instance when the Authority returns an addict to the committing court for ultimate resumption of pending criminal proceedings, such addict shall receive full credit toward service of any sentence which may be imposed for any time spent in any institutional custody from the commencement of his commitment proceedings to the date of the termination of the commitment." When a defendant committed for treatment was found not to be an addict, subsection (f) required the court to "so certify and return the defendant to the court of the pending proceedings for such further proceedings as the judge deems warranted."

Section 15, as indicated, involved defendants discharged as rehabilitated, *i.e.,* as having successfully completed treatment. Pertinent to the issue *sub judice,* section 15(a) authorized the Drug Abuse Authority, *see* Article 43B, § 4, to discharge as rehabilitated a person "committed to its care and custody [who has] abstained from the use of addicting drugs for at least three consecutive years while an outpatient and has otherwise complied with the conditions of his release." Section 15(c) provided:

"(c) *Persons convicted of crime or serving sentences in penal or correctional institutions.*—Any person certified to the Authority pursuant to § 12 ... of this article who is discharged by the Authority as rehabilitated shall be returned to the committing court by the effective date of discharge. Upon such person's return, the committing court shall order the termination of the pending criminal proceedings without imposition of sentence...."

The Legislature thus mandated different treatment for "rehabilitated" drug addicts and unrehabilitated ones. The former were to be discharged without imposition of sentence, while the latter were returned to court for the resumption of the pending criminal charges.

In 1982, Article 43B was incorporated into the Health–General Article, promulgated as a part of Code Revision. *See* Ch. 21, Acts of 1982. Sections 12 and 15 were incorporated

into provisions codified in Title 9, Subtitle 6.[5] Section 12(a) formed the basis for Maryland Code (1982) Health–General Article, section 9–629, delineating who may be committed for treatment after conviction of a crime, and section 9–630, pertaining to, among other things, the court's authority to permit a defendant who has been convicted of, but not yet sentenced for, a crime and authorizing the court to suspend imposition of sentence and adjourn the criminal proceedings if commitment is ordered. *See* Ch. 21, Acts of 1982. Section 9–650(c)(2) of the Health–General Article, which provided that "On return of the [rehabilitated] individual, the court shall order, as appropriate: (i) The termination of the pending criminal proceeding without imposition of sentence," was derived from section 15(c). Section 9–651, requiring the Administration to return to the committing court, for termination of the commitment, an individual it deemed not to be fit for rehabilitation, was derived, in part, from section 12(d). Section 9–653(a)(1) provided for the resumption of pending criminal proceedings when a defendant's commitment was terminated prior to rehabilitation, and section 9–563(b) required that the defendant be given credit for time spent in institutions and custody. Both sections were largely based on sections 12(c), (d), and (e).

Section 8–507 was substantially revised in 1989 in order to "clarify [ ] the authority of a judge to commit a defendant to the Department for evaluation or treatment under certain circumstances." *See* Ch. 782, Acts of 1989. Although it does not appear that the Legislature expressly adopted any one of the drug treatment commitment provisions of the prior law, it certainly was aware of them. The details of the scheme it settled upon are different; however, the outline is generally the same. Moreover, it is apparent that the Legislature has not much deviated from the policy it initiated in 1969. To be sure, initially the rehabilitation effort was aimed at all drug

---

**5.** Prior to their repeal, *see* Ch. 758, Acts of 1988, these provisions were moved, without substantive change, to Title 8, Subtitle 6, which was repealed, effective January 1, 1990. Ch. 782, Acts of 1989.

offenders; first or subsequent offenders alike, whom the court thought could benefit from treatment, were covered, without limitation. It is now clear that only a second time drug offender, sentenced pursuant to Article 27, section 286(b)(1), is now eligible for treatment. From the beginning, however, the Legislature has authorized trial courts, upon determining that a defendant convicted of a crime has a drug dependency, to commit that defendant for treatment, suspending the imposition of sentence and adjourning the criminal proceedings. Section 8-507(a) continues that policy; the court may commit a defendant for treatment, as a condition of release, after conviction.

Since 1969, the various versions of drug rehabilitation legislation reflect the Legislature's concern that a defendant committed for treatment be amenable to treatment and, at the very least, capable of benefitting from it. Moreover, in every version of such legislation since 1969, except the present one, the Legislature expressly provided that defendants whose commitments. are terminated before they are rehabilitated must be returned to court for further proceedings, and, in Article 43B section 15(c) and section 9-650 of the Health-General Article, that defendants deemed to have been rehabilitated must be discharged without further criminal proceedings. This legislative history demonstrates that whenever the Legislature intended to require a definite result, it specifically provided for it.

By providing for further criminal proceedings when a defendant's efforts at rehabilitation were unsuccessful and terminating criminal proceedings when they were successful, an incentive for committed defendants to rehabilitate themselves was provided. As indicated earlier, rather than provide expressly what must occur depending upon how the commitment was terminated, section 8-507 vests the court with discretion in that regard. *See generally* 2A Norman J. Singer, *Sutherland Statutory Construction* § 57.03, at 643-44 (4th ed. 1986) (The term "if" is permissive, carrying no mandate). Insofar as it is so structured and does not draw a distinction between a commitment terminated successfully and one that is terminat-

ed unsuccessfully, section 8–507(i) does represent a departure from the prior legislation. Nevertheless, it is, by no means, a total departure. Investing a trial court with discretion to determine the proper disposition when a defendant's commitment is terminated is not inconsistent with the notion that a defendant should have incentive to complete a drug treatment program. While a defendant may be more highly motivated to complete treatment if that defendant knew that no further criminal proceedings or sanctions would result, it does not follow that allowing a court to decide in each individual case whether additional consequences should obtain will provide no motivation.

■  Thus, given the history of drug rehabilitation legislation, the failure of section 8–507 to provide that pending criminal proceedings are terminated when a defendant has successfully completed a treatment program, *i.e.,* been declared rehabilitated, or that such proceedings are to be resumed when the defendant has not, does not support the State's argument that remand for service of the balance of the sentence was mandatory. Had the Legislature intended a defendant who successfully completed a treatment program to serve the remainder of the mandatory sentence, it certainly would have expressly so provided, as it did in the case of a defendant who withdraws his consent, *see* § 8–507(f), or as it had done, in the case of unsuccessful defendants, in the prior legislation.

We note that our holding is harmonious with the well established principle that "a sentencing judge in a criminal proceeding is 'vested with virtually boundless discretion,'" *State v. Dopkowski,* 325 Md. 671, 679, 602 A.2d 1185, 1189 (1992), quoting *Logan v. State,* 289 Md. 460, 480, 425 A.2d 632, 643 (1981); *Brown v. State,* 80 Md.App. 187, 198, 560 A.2d 605, 610 (1989); *Johnson v. State,* 75 Md.App. 621, 640, 542 A.2d 429, 438 (1988), *cert. denied,* 316 Md. 675, 561 A.2d 215 (1989), provided the "sentence . . . [does not] violate any constitutional requirements such as the prohibition against cruel and unusual punishment; the sentencing judge . . . [is not] moti-

vated by prejudice, ill-will or any other impermissible consid-
erations; and the sentence itself ... [does not] exceed any
limitation set by statute." *Smith v. State,* 308 Md. 162, 169–
70, 517 A.2d 1081, 1085 (1986). *See also Teasley v. State,* 298
Md. 364, 370, 470 A.2d 337, 340 (1984); *Kaylor v. State,* 285
Md. 66, 69, 400 A.2d 419, 421 (1979). The trial judge, having
observed the defendant before and after treatment, will be in
the position to determine whether society's interest would be
better served if that defendant, upon completion of treatment,
is returned to prison or released.

## V.

In addition to committing him to Second Genesis for
treatment, the trial court placed the appellee on probation
"upon release," subject to periodic urinalysis and such after
care program "as the Probation Department recommends."
The appellee argues, therefore, that not only did the trial
court properly exercise discretion in committing him to treat-
ment, as a condition of his release, after suspending the
mandatory sentence, but it also properly prescribed the post-
treatment conditions he was required to follow.

As we have seen, section 8–507(i) is clear—the court is to be
consulted whenever an individual is to be released from a
commitment to determine if that individual should be returned
to court. This subsection applies whether the release is
occasioned by the successful completion of the program or
because the Director, pursuant to section 8–507(h)(3), has
terminated the commitment because the defendant is no long-
er amenable to treatment. In either event, whether, and if so,
on what conditions, the defendant is to be released is a matter
to be determined at the time that the Director consults with
the court. Because we do not know whether the appellee will
successfully complete treatment or otherwise be terminated or
what the circumstances will be at that time, that portion of the
court's judgment ordering that the appellee be placed on
probation upon release, because premature when entered, was
illegal, and, therefore, must be stricken. It cannot be deter-
mined whether, in light of all relevant circumstances, it would

be an abuse of discretion for the court to place the appellee on probation until the appellee has been properly and timely placed on probation and that issue is properly before us.

*JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. COSTS TO BE PAID ONE-HALF BY BALTIMORE COUNTY AND ONE-HALF BY THE APPELLEE.*

CHASANOW, J., concurs in result only.