633 A.2d 495

The NEW PARKMAN HOUSING LIMITED PARTNERSHIP

v.

STATE DEPARTMENT OF ASSESSMENTS & TAXATION.

No. 267, Sept. Term, 1993.

Court of Special Appeals of Maryland.

Dec. 3, 1993.

432

John Henry Lewin, Jr. (Venable, Baetier and Howard, on the brief), Baltimore, for appellant.

Jeffrey G. Comen, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and David M. Lyon, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before GARRITY, WENNER and MOTZ, JJ.

WENNER, Judge.

Under Maryland law, the transfer of real property from a corporation to an original stockholder on the dissolution of the corporation is exempt from recordation and transfer taxes.

Appellant, The New Parkman Housing Limited Partnership (New Parkman), has appealed from a judgment of the Circuit Court for Baltimore City affirming the decision of the Tax Court. The Tax Court had affirmed appellee's assessment of recordation and transfer taxes on property received by appellant as a distribution upon dissolution of the Manhattan Park Apartments Holding Corporation (the Holding Corporation), its wholly owned subsidiary. Appellee is State Department of Assessments and Taxation (SDAT). In affirming the decision of the Tax Court, the circuit court agreed with the Tax Court's conclusion that to be considered an "original stockholder," one must have held stock continuously from when it was first issued. This appeal followed.

For reasons we shall explain, we shall affirm the judgment of the circuit court.

### Facts

On September 7, 1988, The Parkman Corporation (Parkman) entered into a contract with New Parkman for the sale of the Manhattan Park Apartments (Manhattan Park) in Baltimore City. Parkman was the sole owner of Manhattan Park. To accomplish this transfer, yet avoid recordation and transfer taxes, the Holding Corporation was created on October 5, 1988. Parkman received 99 shares of the Holding Corporation's stock, and New Parkman received the remaining share. On December 30, 1988, New Parkman assigned its share to Parkman,[1] after which Parkman by deed transferred Manhattan Park to the Holding Corporation. Because Parkman now owned all of the stock in the Holding Corporation, this transfer from a parent corporation to its wholly owned subsidiary was exempt from recordation and transfer taxes. Maryland Code, Tax–Property Article[2] § 12–108(p)(1) (1986 & Supp.1992). Parkman then assigned its 100 shares of stock in

---

1. Each assignment of stock was accomplished by cancellation of the old stock certificate and issuance of a new stock certificate.

2. Unless otherwise noted, all further statutory references will be to this Article.

the Holding Corporation to New Parkman, and the Holding Corporation was dissolved and Manhattan Park transferred in liquidation to New Parkman.

As required by Maryland Code, Corporations and Associations Article § 3–107, Articles of Transfer were filed with the SDAT recording the transfer of the assets of the Holding Corporation to New Parkman. In conjunction with filing the articles of transfer, a Certificate of Conveyance, designed by the SDAT to determine whether a transfer of real property between business entities is subject to recordation and transfer taxes, was completed. The Certificate of Conveyance is simply a checklist, presenting the statutory requirements for exemption in question form. The question "Is this real property being transferred to a person who was an original shareholder of the corporation?" was answered "yes," and no recordation or transfer taxes were paid at the time of transfer. The SDAT apparently later became aware of the circumstances of the transfer, and assessed New Parkman for taxes in November of 1991:

| | |
|---|---:|
| Recordation Tax | $11,088.00 |
| Transfer Tax – State | 16,797.75 |
| – Baltimore City | 50,393.25 |
| | $78,279.00 |

The imposition of these taxes was affirmed by the Maryland Tax Court. On appeal, the judgment of the Tax Court was affirmed by the Circuit Court for Baltimore City, and this appeal followed.

## I.

When we are called upon to review an issue of statutory interpretation, we are not bound by the decision of the agency, but may substitute our interpretation of the statute for that of the agency. *Comptroller of the Treasury v. Ramsay, Scarlett & Co.*, 58 Md.App. 327, 338, 473 A.2d 469 (1984), *rev'd on other grounds*, 302 Md. 825, 490 A.2d 1296 (1985). Our goal when interpreting a statute is to ascertain the intention of the legislature. In doing so, our focus is upon

the purpose or policy of the statute. *Ayres v. Townsend,* 324 Md. 666, 672, 598 A.2d 470 (1991). Although where the language of the statute is unambiguous and consistent with the statute's apparent purpose, words will be accorded their ordinary meaning, *id.;* words of the statute must be read so as to advance the legislative policy involved. *Baltimore County Coalition Against Unfair Taxes v. Baltimore County,* 321 Md. 184, 203, 582 A.2d 510 (1990). We may, therefore, in addition to the literal or usual meaning of the words of the statute, consider their meaning and effect in the context they are used and in light of the setting, objectives, and purpose of the statute. *Id.*

The controversy in the case *sub judice* centers upon the meaning of the word "original." Appellant asserts that the Oxford English Dictionary defines the word "original" as "existing at first, primary, initial, first." The Tax Court, on the other hand, determined that the legislature intended the word "original" to mean "from beginning to end, without any intervening period of time." As appellant sees it, the Tax Court's interpretation "disregards the natural meaning of the word 'original.' "

Webster's Third New International Dictionary (1981) defines "original," when used as an adjective, to mean:

(1) a: of or relating to, a rise or beginning: *existing from the start:* INITIAL, PRIMARY, PRISTINE; b: constituting a source, beginning, or first reliance; (2) a: taking independent rise: having spontaneous origin: not secondary, derivative, or imitative: FRESH, NEW; b: gifted with powers of independent thought, direct insight, or constructive imagination: CREATIVE, FERTILE, GERMINAL, INVENTIVE; c: constituting the product or model from which copies are made.

*Id.* at 1952 (emphasis added.) The Tax Court's interpretation of the use of the word "original" in § 12–108(q) is certainly consistent with Webster's definition.

■ Obviously, resort to dictionaries will not resolve this issue. That being the case, it is particularly important that we look beyond the statute's language and consider its "purpose

[and] 'other material that fairly bears on the fundamental issue of legislative goal or purpose,' and compar[e] the results," *State v. Thompson* 332 Md. 1, 7, 629 A.2d 731 (1993) (quoting *Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628 (1987)), to reach a "reasonable interpretation, not one that is illogical or incompatible with common sense." *Id.* 332 Md. at 8, 629 A.2d 731.

## II.

■ Section 12–108(q) and related sections of the Tax–Property Article were enacted to close a tax loophole that became apparent following the 1979 transfer of the Baltimore Hilton Hotel. At that time, recordation and transfer taxes, which are imposed when an instrument of conveyance is either recorded in the land records or filed with the SDAT, *see* §§ 12–102, 13–202, were computed upon the consideration paid for the property. The Attorney General had issued an opinion that, because there was no consideration involved, no liability for recording or transfer tax arose when property was transferred to the partners of a dissolving partnership. 62 Op.Att'y Gen. 842 (1977). Relying upon the Attorney General's Opinion, the sale of the Baltimore Hilton was structured so that, rather than purchasing the hotel outright from the partnership that owned it, the buyer acquired the interests of the partnership, then terminated the partnership. The Attorney General determined that, although the purpose of the transaction was the conveyance of real property for valuable consideration, the form of the conveyance was a deed in distribution pursuant to a bona fide dissolution, and thus no recordation or transfer taxes were due. 64 Op.Att'y Gen. 286 (1979).

The General Assembly subsequently amended the recordation tax statute to add what are now §§ 12–106 and 12–108(q), which provide: [3]

---

**3.** Amendments since these sections were originally enacted have generally been technical rather than substantive. In 1992, the statute was updated to incorporate reference to limited liability companies. 1992

§ 12–106.  Tax on corporate, limited liability company, and partnership transfers.

Except as provided in 12–108(p), (q), (v), and (w) of this title, the recordation tax applies to instruments of writing that transfer the real property of a corporation to its stockholders, the real property of a limited liability company to its members, or the real property of a partnership to its partners.

§ 12–108(q).  *Corporate, limited liability company, or partnership conveyance.*—An instrument of writing that transfers real property from a corporation, limited liability company, or partnership on its liquidation, dissolution, or termination is not subject to recordation tax, if the transferee is:

(1) an original stockholder of the corporation, an original member of the limited liability company, or an original partner of the partnership;

(2) a direct descendant or relative within 2 degrees of an original stockholder of the corporation, an original member of the limited liability company, or an original partner of the partnership counting by the civil law method;  or

(3) a stockholder, member, or partner who became a stockholder, member, or partner through gift or bequest from an original stockholder of the corporation, an original member of the limited liability company, or an original partner of the partnership.

*See* 1982 Md.Laws, ch. 813 (the 1982 Amendment).  Corresponding changes were made to §§ 13–206 and 13–207 (state transfer tax), and to §§ 13–404 and 13–405 (the collection of county transfer tax on instruments filed with the Department).[4]

---

Md.Laws, ch. 536.  As these amendments do not affect our discussion, we shall refer only to the current version of the statute.

**4.**  As these provisions either mirror or incorporate the recordation tax provisions, we will, for simplicity, refer only to the recordation tax

In 1984, transfer and recordation taxes of approximately $237,000 were avoided on a transfer of a Howard County property valued at over $12 million. The owner of the property, General Election Co., created a subsidiary corporation and transferred the property to the subsidiary. The subsidiary was then merged into Howard Research and Development Corp. As a result of this and similar transactions, the General Assembly again revised the statutes concerning recordation and transfer tax to limit the exemptions for the transfer of corporate property. 1986 Md.Laws, ch. 686 (the 1986 Amendment). Whereas § 12–108(p)(1) previously exempted any transfer between "a parent corporation and its subsidiary corporation or between 2 or more subsidiary corporations wholly owned by the same parent corporation" for de minimis consideration, it now permits such an exemption only "if the parent corporation is an original stockholder of the subsidiary corporation, or subsidiary corporations, or became a stockholder through gift or bequest from an original stockholder of the subsidiary corporation, or subsidiary corporations."

Section 12–108(p)(3) created an additional exemption for a transfer of property for de minimis consideration from a subsidiary to its parent corporation. Section 12–108(p)(3) applies to those instances where the parent corporation:

(i) previously owned the real property;

(ii) owns the stock of the subsidiary and has owned that stock for a period greater than 18 months; or

(iii) acquires the stock of a subsidiary corporation which has been in existence and has owned the real property for a period of 2 years.

A new subsection (v) was added exempting all transfers of property resulting from a merger of a parent corporation into its subsidiary, but exempting transfers resulting from a merger of a subsidiary into its parent only where the same criteria established in § 12–108(p)(3) for subsidiary-to-parent trans-

provisions. To the extent the recordation and transfer tax provisions are alike, our discussion will apply to both.

fers is met. New subsection (w) exempts transfers resulting from consolidations only if recordation tax was paid when the property was acquired by the corporation consolidating to form a new corporation.

## III.

In his 1979 Baltimore Hilton opinion, the Attorney General discussed federal treatment of "step" transactions:

> ... Admittedly, the substance of the transaction, when considered over its form and reduced to its lowest common denominator, constitutes little more than a conveyance of the Baltimore Hilton Hotel to the Netherland Antilles Corporation for a valuable consideration.
>
> Were we free to disregard the mechanics of the transaction, we would have little difficulty in imposing the taxes, given the result. The Internal Revenue Service has done so for the purposes of Federal income tax at least since 1950, when the rule now known as the "Kimball–Diamond" doctrine was first invoked to look behind a "step" transaction and impose a tax where the taxpayer who is interested primarily in a corporation's assets first purchases its stock and then liquidates the corporation, acquiring the assets in the form of a liquidating dividend, or distribution. The doctrine focuses on the transaction as a whole, not on its separate steps, and looks to the end result in determining whether the imposition of income tax is appropriate.

64 Op.Att'y Gen. at 288–89 (footnotes omitted). Nonetheless, the Attorney General believed, based upon the unambiguous language of the Maryland recordation and transfer tax statutes then in effect, that the "nature of the instrument necessarily determines whether it gives rise to a tax, without regard to the substance of the transaction from which it originates." *Id.* Thus, Maryland law prevented the tax authority from disregarding the form of the transaction in order to base tax liability on the results of the entire transaction.

The 1982 and 1986 Amendments to the recordation and transfer tax statutes were clearly intended to alter the tax

framework for such a transaction, and impose a tax based upon the substance of the transaction. As a result, unless certain criteria are met, the transaction is now to be a taxable transfer, regardless of the form of the transaction. Recordation and transfer tax is now calculated upon the value of the property rather than the recited consideration. § 12–105(g).

■■ The legislature thus shifted from a presumption that a transfer of this nature is nontaxable to a presumption that such a transfer is taxable. As was the Attorney General in 1979, when we are construing the *applicability* of a tax statute, we are to construe it in favor of the citizen rather than the government. *Comptroller of the Treasury v. John C. Louis Co.*, 285 Md. 527, 539, 404 A.2d 1045 (1979). Where, as here, however, we are construing a tax *exemption*, we are to construe it strictly in favor of the state. *Supervisor of Assessments of Baltimore City v. Har Sinai West Corp.*, 95 Md.App. 631, 639, 622 A.2d 786 (1993) (citing *Supervisor of Assessments of Baltimore County v. Bosley Methodist Church Graveyard*, 293 Md. 208, 212, 443 A.2d 91 (1982)).

That being the standard, we agree with the conclusion of the circuit court. Under § 12–108(q), property may be distributed to a current stockholder who is an original stockholder, a direct descendant or an immediate relative of an original stockholder, or who received his or her stock as a gift or devise from an original stockholder, exempt from recordation and transfer tax. Although, as is too often the case, we have no legislative history explaining the General Assembly's choice of these particular criteria, these requirements suggest a legislative desire for continuity.

Appellant contends that the legislature could not have intended that "original" encompass "continuous" as the 1986 Amendment placed an explicit continuity requirement in §§ 12–108(p)(3) and 12–108(v). Sections 12–108(p)(3) and 12–108(v) exempt subsidiary-to-parent transfers where the parent previously owned the property, has owned the stock of the subsidiary for more than 18 months, or the parent corporation

has acquired as a subsidiary a corporation that has owned the property for two years.

The 1986 Amendment, when first introduced, restricted this subsidiary-to-parent exemption only to those situations where the parent previously owned the property. After the first reading, the exemption took its current form. Although the two additional criteria expand the exemption, the time requirements are formulated so as to not exempt transfers to a parent corporation from a newly acquired subsidiary that has very recently acquired the property. In our view, this subsidiary-to-parent standard is a lesser standard than the original-stockholder standard. Unlike the latter standard, the subsidiary-to-parent standard does not require that the parent be involved at the time of incorporation of the subsidiary. On the other hand, it imposes ownership requirements that, viewed in the context of the objectives of the 1982 and 1986 Amendments, are obviously designed to exclude from exemption those situations where the legislature believed the timing of a subsidiary's creation or acquisition indicates an attempt to acquire property indirectly in order to avoid recordation and transfer tax.

Moreover, at the same time the legislature formulated the subsidiary-to-parent requirements, it added the original-stockholder standard to § 12–108(p)(1). If we consider the original-stockholder standard to look forward from the time of incorporation, and the subsidiary-to-parent standard to look backward from the time of transfer, it is unlikely that, at the same time it was creating backward-looking ownership requirements of 18 and 24 months, the legislature would have intended that its forward-looking requirement allow a subsidiary-to-parent transfer, in which the parent acquires ownership of the subsidiary just days or even hours prior to the transfer, to be exempt from recordation and transfer tax.

## IV.

Appellant believes that the Certificate of Conveyance should be considered the SDAT's written interpretation of the stat-

ute, and contends that if the SDAT interprets "original" to encompass "continuous," that should have been embodied in the Certificate of Conveyance. Had the Certificate strayed from the language of the statute and evidenced an attempt by the SDAT to assist the taxpayer in determining how the questions presented should be answered, appellant's contention might have merit. The Certificate of Conveyance, however, mirrors the language of the statute with respect to each exemption. Thus, the word "original" in the questionnaire will necessarily have the same connotation it has in the statute. The Certificate of Conveyance simply cannot be viewed as interpreting § 12–108(q).

## VII.

Over time, the amendments to the recordation tax statute evince a clear legislative intent not to exempt "step"-type transactions which, through the formation and dissolution of business entities, manipulate property ownership for the sole purpose of avoiding recordation and transfer taxes.[5] If we were to adopt appellant's construction of the word "original," we would frustrate the intent of the legislature.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

5.  The legislative history file for Senate Bill 747, which was enacted as the 1986 Amendment, includes an article from the *Howard County Sun*, dated March 16, 1986, which quotes Senator Levitan as saying that "[t]he bill was never intended to tax transfers between a parent company and a subsidiary, just the deals where they set up a corporation to avoid the tax."