765 A.2d 127

**Lanol Williams JONES**

**v.**

**STATE of Maryland.**

**No. 93, Sept. Term, 1999.**

Court of Appeals of Maryland.

Jan. 9, 2001.

Daniel H. Weiss, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Md., on briefs), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, * RAKER, WILNER, CATHELL and HARRELL, JJ.

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

ELDRIDGE, Judge.

The sole question presented by this case concerns the interpretation of Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 150, which makes it a misdemeanor to "make a false statement, report or complaint" to a police officer, "knowing the same ... to be false and with intent to deceive and with intent to cause an investigation or other action to be taken as a result thereof."

On December 14, 1997, the Police Department of the City of Salisbury, Maryland, received a report that gun shots were fired at 401 Naylor Street and that someone had been hit by a bullet. Emergency Medical System units, the fire department, and Officer Mark White of the Salisbury police department, were all sent to 401 Naylor Street in response to the report. Officer White checked the residence for potential victims, searched for evidence and met with paramedics. White also spoke with a neighbor, Alayne Levy, who told him that the defendant, Lanol Williams Jones, and his young niece had gone to the emergency room at the Peninsula Regional Medical Center.

White went to the hospital emergency room where he met and interviewed Jones. Jones explained that he and his niece were walking through a wooded area in the city park when a shot rang out, wounding his niece. Realizing that his niece was shot, Jones picked her up and went to the hospital. After Jones's statement, police officers were dispatched to the park.

White later spoke to someone in the hospital emergency room who gave a conflicting account of the shooting incident. White then returned to Jones to inquire further. In contrast to his earlier statement, Jones told White the following story. At approximately 4:20 in the afternoon, Jones opened the front door of 401 Naylor Street and saw a man standing on the front porch. Jones did not want the police to suspect that drugs were being sold from the house, so he told the man to leave. Jones later looked out the window to see if the man had left and observed a second person approaching. Jones then went downstairs, where his niece followed, to greet the

person at the front door. As Jones opened the front door to peek outside, a shot was fired striking his niece. Jones then used his neighbor Alayne Levy's car to transport his niece to Peninsula Regional Medical Center.

Police Lieutenant Mark Tyler also met Jones at the hospital and heard Jones's account of how his niece was shot when he opened the front door of 401 Naylor Street. Later, at police headquarters, Jones explained to Tyler why he had changed his story. Jones informed Tyler that his brother was having some problems in the neighborhood involving drug dealers and that, therefore, Jones did not want the police going to his brother's house.

Based on Jones's conflicting accounts of the shooting, Jones was charged and convicted by the Circuit Court for Wicomico County of violating Code (1957, 1996 Repl.Vol.), Art. 27, § 150.[1] Thereafter, the court imposed a six month sentence for the false statement conviction.[2] The Court of Special Appeals affirmed in an unreported opinion, and this Court granted Jones's petition for a writ of certiorari. *Jones v. State*, 356 Md. 177, 738 A.2d 854 (1999).

Jones argues that Art. 27, § 150, is not directed at his conduct, as the statute is not violated when an untruthful statement is made in response to questions propounded by the police after an investigation has already begun. According to Jones, "the offense is committed [only] by one who initially informs the police of a falsehood which causes them to undertake an investigation." (Petitioner's brief at 6). Jones contends that "there was no evidence that [he] *initiated* the report of the shooting to police or that he intended that the police undertake an investigation," and, as such, his conviction cannot stand. (*Id.* at 11, emphasis in original). Jones's argument is in accord with the interpretation of the statute set

---

1. Jones was also charged with obstructing and hindering, but he was acquitted of those charges.

2. Jones's six month sentence was imposed concurrent to a separate 30 year sentence for assault in the first degree and other charges based upon an unrelated matter.

forth in our opinion in *Choi v. State,* 316 Md. 529, 560 A.2d 1108 (1989).

The State, on the other hand, argues that a false statement to the police which "causes police ... to embark on a false 'lead' during the course of an ongoing investigation" violates the statute. (Respondent's brief at 5). The State asserts that this Court's interpretation of the statute in *Choi v. State, supra,* "ought to be repudiated and examined anew." (*Id.* at 10).

■ In general, Art. 27, § 150, prohibits the making of false statements to police officers with the intent to cause an investigation or other action to be taken. Section 150(a) provides:

"A person may not make a false statement, report or complaint, or cause a false statement, report or complaint to be made, to any peace or police officer of this State, of any county, city or other political subdivision of this State, or of the Maryland–National Capital Park and Planning Police knowing the same, or any material part thereof, to be false and with intent to deceive and with intent to cause an investigation or other action to be taken as a result thereof."

In *Choi v. State, supra,* 316 Md. at 546–548, 560 A.2d at 1116–1117, this Court thoroughly explored § 150(a) and analyzed the types of conduct which § 150 proscribed. We stated in *Choi* as follows (316 Md. at 547, 560 A.2d at 1116–1117, footnotes omitted):

"Clearly, in enacting this statute, the General Assembly intended to proscribe false reports of crimes and other statements which instigate totally unnecessary police investigations. The statute, however, does not expressly proscribe a false response to police questioning after an investigation has already begun."

"As the statutory language shows, an element of the offense is the intent to cause an investigation or other action to be taken. In our view, this element is not satisfied when a false statement results from an interview as part of an ongoing police investigation. Rather, there must be a false

report of a crime or a statement with the intent to cause other action to be taken. Applying the doctrine of *ejusdem generis,* the 'other action' must be of the same general nature as the initiation of an investigation."

Thus, under *Choi,* the offense of making a false statement to a police officer is not committed by one who, during an ongoing investigation, answers an investigating police officer's inquiries untruthfully. The offense is only committed by one whose false statement causes the police initially to undertake an investigation or other action. The *Choi* opinion reviewed similar statutes in other jurisdictions and pointed out that they had been interpreted "in a like fashion." 316 Md. at 548, 560 A.2d at 1117.

About a year prior to the *Choi* opinion, the Court of Special Appeals had similarly construed § 150 in *Johnson v. State,* 75 Md.App. 621, 542 A.2d 429 (1988). The *Johnson* opinion, after reviewing the legislative history of the statute, held that it is not lying to the police in the course of an investigation that violates § 150; rather it is the making of false complaints of crime to the police with the intent that they begin an investigation or other action that "divert[s] them from their proper duties of preventing crime and investigating actual incidents of crime." 75 Md.App. at 638, 542 A.2d at 437. Applying that holding to the facts of *Johnson,* where the defendant, during an ongoing investigation, gave a fictitious identity to the police, the Court of Special Appeals stated (75 Md.App. at 639, 542 A.2d at 437–438):

"In the case *sub judice,* appellant did not go to the police to give them a false statement; his purpose was not to initiate police action but, at most, to obstruct or divert an investigation already underway. True, he lied in response to questioning, but although the ... officer's brief futile attempt to verify appellant's false responses ... might be construed as an investigation or, at least, 'other action' intended to be taken as a result of the lies, it was not the kind of investigation or similar action contemplated by the statute. Furthermore, we do not believe the giving of false information in response to ... questioning by the police,

even though it is likely to hinder or delay an investigation already underway, is the type of false statement, report or complaint that comes within the 'false alarm' public mischief the General Assembly intended to criminalize when it enacted § 150."

In arguing against the interpretation of Art. 27, § 150, set forth in *Choi* and *Johnson*, the State points to the statutory language "intent to cause an investigation *or other action* to be taken" (emphasis added), and contends that "other action" encompasses any police action resulting from a falsehood during an ongoing investigation. The State contends that the *Choi* and *Johnson* interpretations render the phrase "or other action" to be taken "mere surplusage." (Respondent's brief at 5). As indicated in *Choi*, however, the "other action" refers to something other than an "investigation" but similar to initiating an investigation. 316 Md. at 547, 560 A.2d at 1117. Police engage in activities other than "investigations." They furnish protection, engage in rescue efforts, respond to emergencies, search for dangerous objects, etc. False reports causing the police to initiate these "other actions" are encompassed within § 150 to the same extent as false reports causing the police to initiate investigations.

Art. 27, § 150, was repealed and reenacted with amendments, including amendments to subsection (a), on two occasions after the opinion in *Choi. See* Ch. 147 of the Acts of 1991 and Ch. 172 of the Acts of 1993. Nevertheless, on both occasions, the General Assembly did not modify the critical statutory language construed in *Choi,* and did not indicate any disagreement with the *Choi* opinion. As emphasized on several occasions by this Court, "[u]nder these circumstances, a court should be most reluctant to overrule its prior interpretation of that statutory language." *Nationwide v. U.S. Fidelity & Guar. Co.,* 314 Md. 131, 143, 550 A.2d 69, 75 (1988). We explained in *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981), as follows:

"The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such inter-

pretation is not legislatively overturned, to have acquiesced in that interpretation. *Harden v. Mass Transit Adm.*, 277 Md. 399, 406, 354 A.2d 817 (1976). This presumption is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue. *Harbor Island Marina v. Calvert Co.*, 286 Md. 303, 322–323, 407 A.2d 738 (1979); *Director v. Cash*, 269 Md. 331, 345, 305 A.2d 833 (1973) *cert. denied sub nom. Vucci v. Boslow, Director, Patuxent Institution*, 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974); *Macke Co. v. St. Dep't of Assess. & Taxation*, 264 Md. 121, 132–133, 285 A.2d 593 (1972); *Stack v. Marney*, 252 Md. 43, 49, 248 A.2d 880 (1969). Under these circumstances, it is particularly inappropriate to depart from the principle of stare decisis and overrule our prior interpretation of the statute. *White v. Prince George's Co.*, 282 Md. 641, 657–658, 387 A.2d 260 (1978). *See also Flood v. Kuhn*, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972)."

To the same effect, *see, e.g., Shah v. Howard County*, 337 Md. 248, 256, 653 A.2d 425, 429 (1995); *Workers' Compensation Comm'n v. Driver and Parker*, 336 Md. 105, 120, 647 A.2d 96, 104 (1994); *Harris v. State*, 331 Md. 137, 152–153 n. 8, 626 A.2d 946, 953–954 n. 8 (1993); *Waddell v. Kirkpatrick*, 331 Md. 52, 60, 626 A.2d 353, 357 (1993); *United States v. Streidel*, 329 Md. 533, 551 n. 12, 620 A.2d 905, 914–915 n. 12 (1993); *Forbes v. State*, 324 Md. 335, 342–343, 597 A.2d 427, 430–431 (1991).

Accordingly, we decline to depart from the interpretation of Art. 27, § 150, set forth over eleven years ago in the *Choi* opinion. If there is to be any enlargement of the statute's scope, it must be done by the General Assembly.

■ Turning to the facts of this case, the State failed to show that Jones violated Art. 27, § 150. When Jones made a false statement to Officer White at the hospital, the report of the shooting at 401 Naylor Street had already been made and the investigation had already begun. There was no evidence

or suggestion that Jones made the initial report of the shooting. Prior to Jones's statement, Officer White had been dispatched to Naylor Street, had spoken with a neighbor and others, and had searched for evidence. Officer White went to the hospital as a result of his investigatory activities in the vicinity of 401 Naylor Street. Jones's false statement did not initiate the investigation. Instead, as in *Choi* and *Johnson*, the defendant made a false statement after the investigation was underway. While lying to police officers during an ongoing investigation is not to be condoned, nonetheless it is not the type of behavior at which Art. 27, § 150, is aimed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WICOMICO COUNTY.*