799 A.2d 397

**In re HEATHER B.**

**No. 90, Sept. Term, 2001.**

Court of Appeals of Maryland.

June 7, 2002.

258

George E. Burns, Jr., Assistant Public Defender, Neil I. Jacobs, Assigned Public Defender (Stephen E. Harris, Public Defender, on brief) Baltimore, for petitioner.

Rachel Marblestone Kamins, Asst. Atty. Gen., (J. Joseph Curran, Jr., Attorney General of Maryland, on brief) Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

HARRELL, J.

In February 2000, Petitioner, Heather B., and a number of other students at Roberto Clemente Middle School in Montgomery County, alleged, apparently to school faculty or administrators, that a male teacher at their school had abused female students sexually. After maintaining in two interviews with a detective from the Montgomery County Police Department that the teacher had engaged in such conduct, Petitioner admitted that the allegations were false in a subsequent interview with an investigator for the Montgomery County Public Schools.

On 23 October 2000, the District Court of Maryland, sitting in Montgomery County as a juvenile court [1], found Petitioner

---

1. At the time of the adjudicatory proceeding in this case, the District Court of Maryland, sitting in Montgomery County, had exclusive jurisdiction over a "child alleged to be delinquent" in Montgomery County. Maryland Code (1998 Repl.Vol.), Courts and Judicial Proceedings Article, §§ 3–801, 3–804. Effective 1 March 2002, however, jurisdiction over such proceedings in Montgomery County was transferred to the Circuit Court for Montgomery County. *See* Md.Code (1998 Repl. Vol, 2001 Supp.), Courts and Judicial Proceedings Art., § 3–801.

delinquent for making false statements to a police officer which, if she were an adult, would violate Maryland Code (1957, 1996 Repl. Vol.), Article 27, § 150,[2] and for conspiring to cause a false statement to be made to a police officer in violation of that statute. The District Court placed Petitioner on probation with a number of special conditions and ordered her and her parents to pay restitution in the amount of $85, payable to the Department of Juvenile Justice, for ultimate disbursement to the teacher who was the object of the students' scheme.

Petitioner appealed to the Court of Special Appeals. In an unreported opinion, filed on 27 July 2001, the intermediate appellate court affirmed the judgment of the District Court. We granted Petitioner's petition for writ of certiorari, *In re Heather B.*, 366 Md. 273, 783 A.2d 653 (2001), to consider the following questions:

1.  Whether the Court of Special Appeals erred in concluding that Petitioner could violate or conspire to violate Md. Code (1957, 1996 Repl.Vol.), Art. 27, § 150 where there was

---

**2.** Unless otherwise provided, all statutory references are to Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 150. That section provides, in pertinent part:

(a) *In general.*—A person may not make a false statement, report or complaint, or cause a false statement, report or complaint to be made, to any peace or police officer of this State, of any county, city or other political subdivision of this State, or of the Maryland–National Capital Park and Planning Police knowing the same, or any material part thereof, to be false and with intent to deceive and with intent to cause an investigation or other action to be taken as a result thereof.

. . .

(c) *Penalties.*—A person who violates this section is guilty of a misdemeanor and upon conviction shall be subject to a fine of not more than five hundred dollars ($500.00), or be imprisoned not more than six (6) months, or both.

Effective 1 October 2002, the majority of Article 27, including § 150, will be recodified into the "Criminal Law Article." *See* Ch. 26, § 16 of the Acts of 2002. Two new sections derived "without substantive change" from current Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, §§ 255C(*o*), (q) will take effect on 1 July 2003. *See* Ch. 26, §§ 3, 15 of the Acts of 2002.

no evidence that Petitioner agreed to or did give a false statement that instigated a police investigation.

2. Whether the trial judge should have recused himself after he specifically found that Petitioner was a conspirator at the trial of another alleged conspirator.

## I.

On 16 February 2000, Detective Erol Birch of the Montgomery County Police Department initiated an investigation of charges that a male physical education teacher at Roberto Clemente Middle School ("RCMS") in Montgomery County had abused sexually a number of students.[3] As part of his investigation, Detective Birch interviewed the alleged victims and witnesses of the sexual abuse, including Heather B. (Petitioner), who was 12 years old at the time. In her first interview by Detective Birch, which took place on 16 February 2000, Petitioner described a number of instances in which the male teacher inappropriately had touched her and other girls, and stated that he twice had entered the girls' locker room at the school while students were changing. In addition, Petitioner told Detective Birch that some of the girls reported the instances of the teacher entering the locker room to the physical education in-house resource teacher and another physical education teacher at RCMS. Both of the latter teachers, who are female, denied that the children reported any such incidents to them. On 23 February 2000, Detective Birch conducted a second interview with Petitioner, in which Petitioner reiterated and expanded upon her previous statements regarding the alleged misconduct.

---

3. According to Detective Birch's testimony at Petitioner's adjudicatory hearing, he began investigating the allegations regarding the teacher upon receiving "a child abuse investigation incident report that indicated that a teacher ... may have sexually abused some of the students at ... Roberto Clemente Middle School." Detective Birch did not indicate in his testimony who initially reported the teacher's alleged misconduct to the police. For the purposes of this case, it is sufficient to note that there is no indication or contention in the record that Petitioner initially reported the alleged misconduct to the Montgomery County Police Department.

On 1 March 2000, Mr. Miles Alban, an investigator for the Montgomery County Public Schools, began investigating the allegations against the male teacher. According to Mr. Alban's testimony, he noticed "minor inconsistencies" in the "point of view statements" prepared by the students involved, which had been obtained by the principal of RCMS. He also was "bothered" by some of the language attributed to the teacher in those statements, which Mr. Alban did not believe was the kind of language an adult "would use." After reading those statements, Mr. Alban visited the girls' locker room at RCMS and spoke to the female instructors to whom some of the students allegedly had reported the locker room intrusions. While at RCMS, he discovered that "it would have been impossible for [the male teacher] to stand" where the students alleged he stood in the locker room, "without being seen by one of the female instructors" in the "women's office." In addition, Mr. Alban also learned in the course of his investigation that, prior to making the allegations of sexual misconduct against the male teacher, some of the involved students had requested to meet with their school counselor regarding problems they were having with the teacher in a classroom setting.[4]

At some point during his investigation, Mr. Alban was notified by his supervisor that one of the students "had changed his story."[5] On 9 March 2000, Mr. Alban met with Petitioner's father at RCMS and explained that "some of the

4.  In February 2000, Denisse V. and Mirella H., two of the juveniles that also alleged the misconduct, filed a request to see their counselor regarding the teacher. Denisse V. indicated in her testimony at Petitioner's adjudicatory hearing that they had filed the request because the teacher was not treating them "properly." According to Denisse V., she was mad at him because "he would curse" and would yell because the students "were not playing volleyball" correctly. Mirella H. also explained that she "didn't like" him "[b]ecause he yelled a lot . . . and cussed sometimes."

5.  Detective Birch interviewed the student, Ahmad T., in early March. In that interview, Ahmad T. advised Detective Birch that "he lied to the school, that he did not see [the teacher] go into the locker room, because he was mad at [the teacher]."

children were changing their stories." He urged Petitioner's father "to talk to his daughter," who was located in a conference room at the school, "and see if he could not . . . elicit the truth of what happened." Petitioner's father "spent about fifteen minutes" with his daughter, during which she continued to "maintain[ ] that the story was true." At that point, Petitioner's father left Petitioner and Mr. Alban alone. Under questioning by Mr. Alban, Petitioner admitted that the allegations of sexual misconduct were false. As Mr. Alban testified:

> I told [Petitioner], I said, [the teacher] had been teaching thirty years. He was going to lose his job, his wife was going to leave him, and he was going to go to jail. At that point, she said, started crying, said it didn't happen, I couldn't tell my father, he'll ground me, please don't tell my father.

On 12 May 2000, the State of Maryland (Respondent) filed a petition in the District Court of Maryland, sitting in Montgomery County as a juvenile court, alleging that "on or about" 16 and 23 February 2000, Petitioner, in violation of Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 150,

> did unlawfully and knowingly with intent to deceive, in Montgomery County, Maryland, make and cause to be made a false report, statement and complaint to a Montgomery County police officer, knowing the statement, complaint and report to be false, with the intent to cause an investigation and other action to be taken as a result thereof.

In addition, the petition also alleged that "on or about and between" 1 February and 25 February 2000, Petitioner "did unlawfully and wilfully" conspire with six other juveniles to commit acts in violation of § 150. Specifically, the petition maintained that Petitioner conspired with the other students "to make and cause to be made a false report, statement and complaint to a Montgomery County police officer, knowing the same to be false and with intent to deceive and with intent to cause an investigation and other action to be taken as a result thereof."

On 21 October and 23 October 2000, an adjudicatory hearing was held in the District Court. A number of individuals testified, including two of the juveniles alleged to have conspired with Petitioner. Mirella H. explained that Petitioner asked her if she "wanted to help her tell a lie about [the teacher]." Mirella H. agreed because she "didn't like him." Mirella H. then testified, however, that Petitioner did not tell Mirella H. that what she was saying about the teacher was false. According to Mirella H., she believed that the teacher had touched Petitioner and thought that Petitioner was asking her to help because "[Petitioner] knew that [she] didn't like him either."

Likewise, Denisse V. testified at the hearing that Petitioner "told [her] what happened." Specifically, Denisse V. indicated that Petitioner told her that "[s]he had seen [the teacher] come in the locker room and that he had touched her and [Karey] R.," and also that he "came up to them and gave them a group hug." Denisse V. testified that she believed that something "had happened to [Petitioner]," and admitted that she told school personnel that she witnessed the alleged events, even though she did not, "because [she] was just trying to help. . . ." Finally, Denisse V. testified that Petitioner never told her to lie to the police and agreed that she had "heard some stories and . . . continued a lie that [she] had been told. . . ." [6]

At the conclusion of the two day adjudicatory proceeding, the District Court found Petitioner delinquent for making

---

6. The following excerpt from Denisse's testimony describes the nature of the false statements made by Denisse V. about the teacher.

[Petitioner's Counsel:] [D]id anybody tell you to lie to the police?
[Denisse V.:] Mm-hmm—no, not—in a way, like that, lied to the police, but like in different wording, phrasing.
[Petitioner's Counsel:] Okay, somebody told you not to lie, but they told you something else? What do you mean by that?
[Denisse V.:] Like, like—they said like in a way it was lying, but they didn't tell me specifically lies, (unclear).
[Petitioner's Counsel:] Okay, they told you something to say?
[Denisse V.:] Yes.
[Petitioner's Counsel:] That turned out to be a lie?
[Denisse V.:] Yes.

false statements to a police officer which, if she were an adult, would violate § 150, and for conspiring to cause a false statement to be made to a police officer in violation of that statute. On 21 November 2000, a disposition and restitution hearing was held. The District Court placed Petitioner on probation "in the care and custody of" her parents, following a brief detention at the courthouse, and imposed a number of special conditions on her probation.[7] In addition, the District Court ordered that Petitioner and her parents "jointly pay restitution to the Department of Juvenile Justice in the amount of $ 85," by 20 December 2000, for disbursement to the victim of Petitioner's scheme.

■ On 27 November 2000, Petitioner appealed to the Court of Special Appeals. Petitioner maintained that the District Court erred in holding that Petitioner's conduct violated § 150 because Petitioner was "merely interviewed as part of a police investigation." According to Petitioner, pursuant to our holding in *Jones v. State*, 362 Md. 331, 765 A.2d 127 (2001),[8] an individual must make a false statement, report, or complaint to the police with the intention of initiating a police investigation in order to violate § 150. In addition, Petitioner argued that the "proof in the case at bar failed because there was no evidence that there was an agreement to violate § 150." In light of this Court's decision in *Jones*, Respondent conceded that Petitioner's "adjudication of delinquency for

---

7. The District Court ordered as conditions of Petitioner's probation that she meet with a counselor, perform 100 hours of community service, "obey all laws and rules of the home," attend a Victim Awareness Education Program, and observe a "curfew as set by [her] parents." In addition, it was further ordered that:

> [Petitioner a]ttend school everyday, all classes, perform all assignments. Read 10 stories of victims of physical abuse or sexual abuse and synopsize what happened to each victim and write at least 50 words about the consequence to the victim and the perpetrator, if the victim did not come forward. She will have no telephone contact with friends and no guests in her home from Sunday through Thursday after 3:00 PM until December 31, 2000. Have no contact with co-Respondents.

8. *Jones* was decided after the proceedings in the District Court.

making a false statement to a police officer should be reversed" because Petitioner's statements to Detective Birch were made "once the investigation was already in progress." [9] Respondent, however, maintained that "the conspiracy adjudication should be affirmed." According to Respondent, the "evidence in this case was legally sufficient to establish [Petitioner's] role in a criminal conspiracy to make false allegations to police regarding [the teacher]."

In an unreported opinion, the Court of Special Appeals affirmed the judgment of the District Court. The Court of Special Appeals held that Petitioner's actions violated § 150 because they "were 'part and parcel' of the plan to falsely accuse the teacher and cause the ensuing police investigation." According to the intermediate appellate court, "[a] police investigation was the natural and probable result of the false statements." *Id.* In addition, the Court of Special Appeals concluded that the evidence was "sufficient to show that [Petitioner] and other persons conspired to make false statements to school personnel" and, by inference, to "cause a police investigation to be initiated."

## II.

■ Initially, we must determine whether Petitioner's actions constituted a violation of Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 150. The relevant portion of the statute provides:

(a) *In general.*—A person may not make a false statement, report or complaint, or cause a false statement, report or complaint to be made, to any peace or police officer of this State, of any county, city or other political subdivision of this State, or of the Maryland National Capital Park and Planning Police knowing the same, or any material part thereof, to be false and with intent to deceive and with intent to cause an investigation or other action to be taken as a result thereof.

---

9. We independently decide issues of law and are not bound by a party's concession of law in a particular case. *See Imbesi v. Carpenter Realty Corp.,* 357 Md. 375, 380 n. 2, 744 A.2d 549, 551 n. 2 (2000).

Petitioner maintains, and Respondent concedes, that our recent interpretation of § 150 in *Jones v. State*, 362 Md. 331, 765 A.2d 127 (2001), precludes a holding that Petitioner violated § 150. In its reasoning, however, the Court of Special Appeals contended that Petitioner's case was "factually distinguishable" from *Jones* because the evidence in the present case "permitted a finding that one or more persons, acting in concert, made knowingly false statements to school personnel, prior to the police investigation." Based on that evidence, the intermediate appellate court noted that the "common sense inference to be drawn is that the statements caused the investigation" because "[a] police investigation was the natural and probable result of the false statements." Therefore, it was appropriate, in that court's view, to affirm "the finding of delinquency for giving false statements to a police officer." As sometimes happens, we disagree with the Court of Special Appeals.

In *Jones,* a police department received a report that gun shots were fired at a residence and that "someone had been hit by a bullet." *Jones,* 362 Md. at 333, 765 A.2d at 128. An officer arrived on the scene and spoke with a neighbor who told him that the defendant, Jones, and his niece had departed the scene for the emergency room of a local hospital. Upon arrival at the hospital, the responding officer interviewed Jones who explained that "he and his niece were walking through a wooded area in the city park when a shot rang out, wounding his niece." *Id.* Later, however, someone in the hospital emergency room supplied a different account of the incident. When the officer re-interviewed Jones, Jones changed his story and explained that his niece was shot when he "opened the front door [of the residence] to peek outside" at a person approaching the door. *Jones,* 362 Md. at 334, 765 A.2d at 128. Based on "Jones's conflicting accounts of the shooting," he was charged with and convicted of violating § 150. *Jones,* 362 Md. at 334, 765 A.2d at 129. The Court of Special Appeals, in an unreported opinion, affirmed that conviction. Drawing on our earlier interpretation of § 150 in *Choi v. State,* 316 Md. 529, 560 A.2d 1108 (1989), we disagreed.

In reversing the judgment of the Court of Special Appeals, we reiterated our analysis of § 150 in *Choi* and explained that,

"[t]he statute . . . does not expressly proscribe a false response to police questioning after an investigation has already begun."

"As the statutory language shows, an element of the offense is the intent to cause an investigation or other action to be taken. In our view, this element is not satisfied when a false statement results from an interview as part of an ongoing police investigation. Rather, there must be a false report of a crime or a statement with the intent to cause other action to be taken."

*Jones*, 362 Md. at 335–36, 765 A.2d at 129 (quoting *Choi*, 316 Md. at 547, 560 A.2d at 1116–17). "Other action," we concluded, "refers to something other than an 'investigation' but similar to initiating an investigation," for instance "furnish[ing] protection," "engag[ing] in rescue efforts," "respond[ing] to emergencies," and "search[ing] for dangerous objects." *Jones*, 362 Md. at 337, 765 A.2d at 130 (citing *Choi*, 316 Md. at 547, 560 A.2d at 1117). Therefore, where there was "no evidence or suggestion that Jones made the initial report of the shooting," Jones's false initial statement to the police "did not initiate the investigation" and we declined to hold that his false statement to the police constituted a violation of § 150. *Jones*, 362 Md. at 338–39, 765 A.2d at 131.

In the present case, as we explained at *supra* note 3, neither party contends that Petitioner contacted the police initially. Moreover, both concede that Petitioner made false statements to the police during the investigation of the teacher. Applying the reasoning in *Jones*, where there is no evidence that Petitioner's false statements to the police initiated the investigation into the alleged misconduct and it is clear that Petitioner's false statements to the police were made only after the investigation was underway, Petitioner may not be found delinquent for making false statements to a police officer which, if she were an adult, would violate § 150. "While lying to police officers during an ongoing investigation is not to be condoned, nonetheless it is not the type of behavior at which

Art. 27, § 150, is aimed." *Jones*, 362 Md. at 339, 765 A.2d at 131.

Likewise, although not argued by Respondent, we are unable to conclude that Petitioner violated § 150 by causing a false statement, report, or complaint to be made to the police with the intent to cause an investigation. In its brief to this Court, Respondent concedes that "[n]ot addressed by the trial court, nor by either party, was what statements were made, and by whom, that *caused* the investigation to begin in the first place." Absent such evidence, Petitioner cannot be held delinquent for causing false statements to be made to the police in violation of § 150.[10]

■ Next, Respondent contends that even though Petitioner's conduct did not constitute a violation of § 150, "[t]he evidence in this case was legally sufficient to establish [Petitioner's] role in a criminal conspiracy to make false allegations to police, or to cause such allegations to be made, regarding [the teacher]." Petitioner, on the other hand, maintains that the "crucial element of the conspiracy is the agreement" and argues that in this case there was "no evidence to support the conclusion that an agreement" to falsely accuse "a detested teacher to school officials amounted to a conspiracy to violate § 150." The Court of Special Appeals held that the evidence was "sufficient to show that [Petitioner] and other persons conspired to make false statements to school personnel," and explained that,

[t]he fact of the agreement between [Petitioner] and others to make false statements to school personnel was sufficient from which to infer an intent to cause a police investigation to be initiated because such an investigation was the natural

---

**10.** Even if evidence existed establishing that Petitioner "caused" a false statement to be made to the police, the State retained the additional burden of proving that Petitioner made the false statement with the "intent to cause an investigation or other action to be taken [by the police] as a result thereof." § 150(a). As we discuss *infra* at pages 16–17, that intent is not supported on this record.

and probable result of the false statements that were the subject of the agreement.

For the following reasons, we are compelled to agree with Petitioner.

■■■ Our review of this matter is limited to " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *In re Timothy F.*, 343 Md. 371, 380, 681 A.2d 501, 505 (1996) (quoting *Jackson v. Va.*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)) (citations and emphasis omitted). *See also Winder v. State*, 362 Md. 275, 325, 765 A.2d 97, 124 (2001); *State v. Pagotto*, 361 Md. 528, 533–34, 762 A.2d 97, 100 (2000). As we have explained,

> [j]udging the weight of evidence and the credibility of witnesses and resolving conflicts in the evidence are matters entrusted to the sound discretion of the trier of fact. When the trier of fact is the trial court, its judgment on the evidence will be set aside only if it is clearly erroneous.

*In re Timothy F.*, 343 Md. at 379–80, 681 A.2d at 505 (citations omitted). This standard of review "applies in juvenile delinquency cases. In such cases, the delinquent act, like the criminal act, must be proven beyond a reasonable doubt." *In re Timothy F.*, 343 Md. at 380, 681 A.2d at 506 (citations omitted).

■■■ A criminal conspiracy " 'consists of the combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means.' " *Mitchell v. State*, 363 Md. 130, 145, 767 A.2d 844, 852 (2001) (quoting *Townes v. State*, 314 Md. 71, 75, 548 A.2d 832, 834 (1988)). It is well accepted that the essence of a criminal conspiracy is an unlawful agreement. *See Id.* Therefore, we ask the questions: (1) was there evidence that Petitioner and the other students had a common plan; and, (2) was the common plan a plan to make false statements to the police or cause false statements to be made to the police with the intent to cause an investigation or other similar action to be taken? Although it appears

that there was sufficient evidence to establish that Petitioner and the other students had a common plan (e.g., the students involved provided Detective Birch with similar descriptions of the teacher's alleged misconduct), the evidence does not establish, beyond a reasonable doubt, that the common plan was to commit acts within the purview of § 150.

■ As we noted in *Mitchell*, "conspiracy is necessarily a specific intent crime; there must exist the specific intent to join with another person in the accomplishment of an unlawful purpose or a lawful purpose by unlawful means." *Mitchell*, 363 Md. at 146, 767 A.2d at 853. Therefore,

> [w]hen the object of the conspiracy is the commission of another crime, as in conspiracy to commit murder, the specific intent required for the conspiracy is not only the intent required for the agreement but also, pursuant to that agreement, the intent to assist in some way in causing that crime to be committed.... Thus, if the conspiracy is to commit murder, the intent must be to commit (or have someone commit) those acts that would constitute murder.

*Id.* Here, the burden was on Respondent to present evidence of Petitioner's specific intent to make a false statement or cause a false statement to be made to the police in order to cause an investigation. Attempting to meet that burden, Respondent presented testimonial evidence that the students involved, including Petitioner, agreed to lie to school personnel about the teacher. According to Respondent, the agreement and subsequent actions of the students demonstrated their intent to initiate a police investigation because the "natural and foreseeable consequence" of their actions was "that the police would be notified of the allegations and presumably act upon them." We disagree.

■ There is no direct evidence that Petitioner or any of the other students involved intended that their false statements lead to a police investigation. Although Respondent may prove the elements of a conspiracy through circumstantial evidence, *see Mitchell*, 363 Md. at 145, 767 A.2d at 852; *McMillian v. State*, 325 Md. 272, 292, 600 A.2d 430, 440 (1992),

in our view the record here supports at best only an inference that the students intended their false allegations to lead to professional difficulties for, not necessarily a criminal investigation of, the teacher. Specifically, based on the decision of the students to make the false allegations to school personnel, rather than to the police, and on the admitted disdain for the teacher held by a number of the students, we perceive that a rational trier of fact could infer that the agreement between the students indicated their specific intent to cause professional disciplinary action be taken by the school against him. On the other hand, we are unconvinced that evidence of the students' agreement to lie to school personnel about the teacher supports an inference that Petitioner and the other students intended their false statements further to cause a police investigation. For example, there was no evidence suggesting that Petitioner and the other children were aware of any school policy or legal requirement [11] that such allegations be reported by the school administration or faculty to law enforcement authorities. On the state of this record, we are unwilling to recognize as reasonable that any rational factfinder would infer so attenuated a conclusion as that a specific

11. Under Md.Code (1999 Repl.Vol., 2001 Supp.), Family Law Art., § 5–704(a), an "educator" (which includes "any teacher") who has reason to believe that a child has been "subject to abuse" is required to make "an oral report" to "the local department [of social services] or the appropriate law enforcement agency." (Emphasis added). In addition, the individual must make "a written report" to "the local department not later than 48 hours" after the incident that "caused the individual to believe the child had been subjected to abuse" and must also forward a copy of that report "to the local State's Attorney if the individual has reason to believe that the child has been subjected to abuse." Md.Code (1999 Repl.Vol., 2001 Supp.), Family Law Art., § 5–704(b). Subsequent to receiving an oral report of suspected abuse, the "agency to which" the report was made is required to "immediately notify the other agency." Md.Code (1999 Repl.Vol., 2001 Supp.), Family Law Art., § 5–704(b)(2)(i).

While ignorance of the law often is not suffered as an excuse for an adult's conduct, it is unreasonable to charge Petitioner, age 12 at the time of the events giving rise to this case, with the implied knowledge of the foregoing statutory scheme by accepting the Court of Special Appeals's rationalization that lying to the school authorities would naturally and foreseeably lead to a police investigation.

intent to cause a police investigation was the object of the conspiracy in this case.

In view of our disposition of the first issue in this, it is unnecessary for us to reach the second issue regarding whether the District Court judge erred in not recusing himself from hearing Petitioner's case.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT OF MONTGOMERY COUNTY; RESPONDENT TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*